The value of the property in that case was thus a very small percentage above the amount of the indebtedness, and not ample to meet the debts, while in the case at bar the value of the property retained was several times the amount of the indebtedness.

The principles involved are very clearly announced in the case of *Hunt* v. *Spencer*, 20 Kan., 126.

Finding neither actual nor constructive fraud in this case, a decree will be rendered for the defendant.

*Decree for defendant.*

Chittenden and Kinkade, JJ., concur.

---

Woloveck et al. *v.* Schueler.

*Contracts—Sale of real estate—Forfeiture for breach refused —Stipulation for liquidated damages construed as penalty —Substantial payments by vendee and vendor without marketable title.*

Where the owner of realty enters into a contract for the sale thereof, and by the terms of the contract of sale the vendor is to convey a title free and clear of all incumbrances, excepting a certain mortgage named in the contract, and in case of default in payment of the installments or interest the vendor may elect to treat the contract as void, in which event "the payments that shall have been made may be retained by the party of the first part as liquidated damages for the nonperformance of its

Damages, 17 C. J. § 262; Vendor and Purchaser, 39 Cyc. p. 1375.

contract," a court of equity will refuse to decree a forfeiture, and will construe the stipulation for liquidated damages as a penalty, where the vendee has paid a substantial sum on the purchase price, after which a third party, by decree of court, has been granted a dower interest in the property, thus establishing the fact that the vendor did not have a marketable title, the purchaser not being in default in payments of installments or interest at the time of the suit in which the third party was decreed a dower interest in the property and the default for which forfeiture is asked occurring subsequent to such decree.

(Decided December 19, 1922.)

ERROR: Court of Appeals for Summit county.

*Messrs. Burch, Bacon & Denlinger,* for plaintiffs in error.

*Mr. W. M. Webb* and *Messrs. Musser, Kimber & Huffman,* for defendant in error.

WASHBURN, P. J. The record in this case discloses that Charles F. Schueler, defendant in error, entered into a written contract on or about the 12th day of June, 1919, with Max Woloveck, by which said Schueler sold to said Woloveck certain real estate and delivered the possession of the same to Woloveck. Woloveck agreed to pay for the real estate the sum of $80,000. The cash payment stipulated in the contract was $16,000, which Woloveck paid to Schueler upon the execution of the contract; he further agreed to pay during the first year $300 per month, and, in addition thereto, $2,000 on or before June 15 of that year, making the aggregate for the year in monthly payments and the cash payment, exclusive of interest, the sum of $5,600; and these payments were made by

Woloveck according to the terms of the contract.

The contract further provided that during the succeeding year, Woloveck should pay $300 per month, commencing June 1, 1920, and the further sum of $2,000 in cash on or before June 15, 1921, aggregating for that year in monthly payments and cash payment, exclusive of interest, the sum of $5,600. Woloveck, or his wife, who succeeded to his rights under the contract, made these payments of $300 per month up until the first day of November of 1920, but she failed to pay for November, December and January, and this suit was begun in Common Pleas Court on January 19, 1921, when there were $900 in installments and some interest due under the contract.

The contract further provided that for the third year Woloveck should pay $300 per month for the first six months, commencing July 1, 1921, and $1,000 in cash on or before the 15th day of December, 1921, aggregating for the six months in monthly payments and cash payments, exclusive of interest, the sum of $2,800, and if all these payments had been made according to the contract, that would have left a balance of $50,000 of the purchase price of said property still due, and the contract provided that at that time Schueler should execute and deliver to Woloveck a deed for the property, subject to a first mortgage thereon of $20,000, and that said Woloveck should execute and deliver to said Schueler a second mortgage on said property for the sum of $30,000. It was further provided that the sums due and payable under the contract should bear interest at the rate of

7% per annum, payable semiannually on the 15th days of June and December of each year.

The contract further provided that "if any one of said installments or the interest accrued thereon shall not be paid when due, then all said installments, together with the interest, shall at once become due and payable *at the option of the first party*," and contained the further provision that "in case default shall be made by the party of the second part, his heirs, executors, administrators or assigns, in any of the conditions above stipulated to be performed by it, it shall and will be lawful for the party of the first part, if he so elects, to treat this contract as thenceforth void, and to re-enter upon said premises at any time after such default, without serving upon the party of the second part, or any person holding under him, a notice to quit said land; and in case this contract shall be so treated as thenceforth void, the party of the second part, or those claiming under him, shall thenceforth be deemed a mere tenant at will, under said party of the first part, and be liable to be proceeded against without notice to quit, under the provisions of the law regulating proceedings in cases of forcible entry and detainer; and the party of the first part, in such case, shall be at liberty to sell the land and premises to any person whatsoever, without being liable in law or in equity to the party of the second part or any person claiming under him for any damages out of such sale or to return any payments made on account of or under this contract, *and the payments that shall have been made may be retained by the party of the first part as liquidated damages for*

*the non-performance of this contract* on the part of the party of the second part."

As has been said, Schueler brought this action when Woloveck was in default in his monthly payments of $900 and interest, the total amount in default being less than $3,000, and without notifying Woloveck that he had elected, under his option in the contract, to declare that the balance of the purchase price should then become due and payable.

The petition set forth the forfeiture clause of the contract, and alleged that Schueler "here and now elects said contract and sale agreement as void and of no further force and effect in law, and as between this plaintiff and the defendant Max Woloveck, or any person or persons claiming any right, title or interest in and to said described property under any assignment, sale or agreement, made or attempted to be made by the defendant Max Woloveck, and in particular the named defendant Fannie Woloveck * * * " and that Schueler, "by reason of the default and failure of the defendant to make said payments as hereinbefore averred, here and now demands his right of possession of said described property, and here and now asserts his right to control said property and the rents, issues and profits from said property, and this plaintiff avers that said contract and sale agreement is terminated, and at an end, and of no force and effect in law, as between this plaintiff and the defendant, Max Woloveck, or any person or persons claiming under him, the same as though said contract had never existed."

It will thus be seen that Schueler, not having

exercised his option to declare all of said purchase price due, and not having given Woloveck notice of such election and a reasonable time in which to pay the balance of said purchase price, by the bringing of the suit and his allegations in the petition declared a forfeiture of the very substantial sum that had been paid on the contract by Woloveck, and sought to recover possession of the property, the prayer of the petition being that the Wolovecks should be restrained from going upon said premises for the purpose of collecting rents and from the possession and control of said premises, and "that the court shall decree said contract and sale agreement as terminated, and *any* and *all* rights and interests of the several named defendants in and to said described property *by reason of said contract* shall be *terminated and ended*" and "that the plaintiff be given the possession and control and occupancy of said described property." The prayer of the petition also asked that the title to said property should be quieted in Schueler, and that he should be "given such further judgment, order and decree herein as is just and equitable, and as the facts in said case shall warrant."

The answer of Max Woloveck and Fannie Woloveck, after admitting the execution and terms of the contract and the default as alleged, set forth that Schueler, in order to induce them to enter into said contract, represented that said premises were free and clear of incumbrances except the incumbrances set forth in the contract, and, relying upon this representation, the Wolovecks were induced to enter into the contract and to pay what

had been paid thereon, and alleged that said premises were not free and clear of incumbrances other than those set forth in the contract, but that one Ella F. Richards, a former wife of James H. Case, a former owner of the premises, was entitled to a life estate in the one-third interest in the premises, and that she had established her right to such interest by a decree of the Common Pleas Court of Summit county; Ella F. Richards was made a party to the suit, and answered, setting up her interest in the property, which she alleged had been established in a suit wherein Schueler and the Wolovecks were parties, and copies of the pleadings and decree of the court in that case were introduced in evidence in this case.

The record further discloses that the suit brought by Ella F. Richards to establish her interest in the property, and in which Fannie Woloveck was a party defendant, was filed in October, 1920, and at a time when the Wolovecks were not in default at all, and the subsequent default in payments, upon which was based the forfeiture declared by Schueler, all occurred while Ella F. Richards was asserting in court her right to an interest in the property in a suit in which Schueler and Fanny Woloveck were parties.

The essential facts in the case are not in dispute.

Whether or not the petition should have been construed merely as an action at law to recover possession of the premises after a forfeiture of the contract had been declared by Schueler is not now important; the case was treated by all the parties and the court as an action in equity, in

which it was sought to have a court of equity declare, or at least ratify, a forfeiture of the contract, and the decree of the court was that unless the Wolovecks should make all payments named in the contract, except the $50,000 covered by the mortgages, and should execute a second mortgage on the premises for $30,000, as stipulated in the contract, the same to be done within six weeks from the order, "the plaintiff shall be entitled to the possession of the premises described, and the contract of sale and purchase between said parties, shall be delivered up, surrendered and cancelled, and likewise cancelled of record in the recorder's office, and all former rights, title and interest of the plaintiff in and to said property, and to the possession of the same, shall be wholly and fully restored to plaintiff, and any and all rights under said sale agreement held by defendants or by any person upon their behalf, shall be terminated and held for naught." The decree of the court took no notice of and made no order in reference to the interest of Ella F. Richards in and to the property.

This judgment and decree is before this court on error proceedings, prosecuted by the Wolovecks.

We regard it as settled in this state, as it is in many of the states in the Union, that a contract for the sale and purchase of real estate, where the vendee takes possession, which contract binds the vendee to pay therefor and binds the vendor to convey on payment of the price, gives to the vendee an equitable estate in the land equal to the amount of the purchase money paid by him, and which, upon full payment, may ripen into a complete equity, entitling him to conveyance of the legal

title according to the terms of the contract, and that until such full payment and conveyance are made the vendor has the legal title and a beneficial estate in the lands to the extent of the unpaid purchase money. *Jaeger* v. *Hardy,* 48 Ohio St., 335, and *Coggshall* v. *Marine Bank Co.,* 63 Ohio St., 88.

Where the vendee takes possession he has a vested interest, which may be sold upon execution. *First Natl. Bank of Cortland* v. *Logue, Trustee,* 89 Ohio St., 288.

Where there has been a breach of the contract by the vendee's failure to make the payments specified in the contract, the vendor may bring an action against the vendee for the payments due, recover judgment therefor, levy upon the land and sell the same to satisfy such judgment, thereby extinguishing the equity of the vendee in such land. The vendor may also treat the transaction as giving to him a lien upon the premises in the nature of an equitable mortgage, and he may bring an action to foreclose the same and obtain an order requiring the vendee to pay the balance due by a certain time, and, in default thereof, have the premises sold to satisfy the claim of vendor for the balance due on the contract. Where the vendee is in possession and a substantial part of the purchase price has been paid, this is the equitable and fair procedure to adopt.

Where the contract, as in this case, provides for a forfeiture, which the vendor may declare, he may declare such forfeiture and bring an action at law in ejectment to recover the possession of the premises, but in such case the vendee may by answer set

up facts, if they exist, which will justify a court of equity in relieving him against the consequences of the forfeiture.

In the case at bar, Schueler asked and obtained an order of the court forfeiting the equity or interest of the Wolovecks in the property.

We consider that in Ohio, as in most jurisdictions, the rule is well settled that courts of equity generally refuse to aid in the enforcement of forfeitures. It was said in *Webster* v. *Dwelling House Insurance Co.*, 53 Ohio St., 558, 563, that:

"A primal rule is that forfeitures are not favored either in equity or at law; indeed, it is declared as a universal rule that courts of equity will not lend their aid to enforce a forfeiture."

But the better view is that the rule is not absolute or inflexible, any more than it is true that every forfeiture is harsh and oppressive, and the modern rule is that in cases otherwise cognizable in equity forfeitures will be enforced when that is more consonant with the principles of right, justice and morality than to withhold relief.

In the case at bar, the court was asked to and did lend its aid to enforce a forfeiture, and in view of the facts disclosed by the record we regard the giving of such aid as very inequitable and unjust; indeed, the facts clearly warranted the court in giving relief against the consequences of the forfeiture. In the first place, Schueler expressly contracted to deliver a marketable title, free and clear of incumbrances except those specifically mentioned in the contract, and at the time the decree was made in the court below it had been established by a judgment of the same court that he did

not have a marketable title, that Ella F. Richards had a substantial interest in the property; then, too, the Wolovecks had paid a very substantial sum upon the purchase price, and they were not in default at the time Ella F. Richards made them parties in a suit in which she asserted her interest in the property, which in equity furnished a sufficient excuse for the default in payments which followed. Schueler, without waiting until it should be determined whether or not Ella F. Richards had an interest in the property, declared a forfeiture and brought this suit, and at the time he obtained the decree in the court below that same court in another suit had determined that he did not have the title which he sold and agreed to convey to the Wolovecks, and for the court to order the Wolovecks to pay the unpaid installments under the contract within six weeks and accept a deed of the property subject to the rights of Ella F. Richards, or lose all that they had paid upon the property, was unjust, harsh and oppressive.

We recognize that parties are at liberty to insert in their contracts forfeiture clauses similar to the one contained in this contract, and that they may make time of payment the essence of the contract, and that there may be cases where a court of equity cannot give relief to a defaulting party,* but we do not regard this as such a case.

While the Wolovecks did not specifically pray for relief against the forfeiture declared by Schueler, they did allege that Schueler sold and represented that he owned and had a right to sell the

---

*See *Norpac Realty Co.* v. *Schackne,* 107 Ohio St., 425, decided since the announcement of this opinion.

whole of the premises, which he agreed to convey by good and sufficient warranty deed, free from any and all incumbrances, except those specified, and that they were induced to enter into the contract and make the payments they had made relying upon that representation and agreement by Schueler, and that, as a matter of fact, he did not have such title, but that Ella F. Richards had established her right to a life estate in a part of the premises and was entitled to a part of the rents and profits thereof, and they asked that the contract be cancelled and for a return of the money paid by them, subject to a proper accounting for the use of the premises. Considering these facts in the light of the substantial sums that had been paid, we are clearly of the opinion that the equities were such as to entitle the Wolovecks to relief against the forfeiture.

It seems to us on the plainest principles of equity that where the purchaser is in possession and has paid a substantial part of the purchase price there should be no forfeiture for default of the purchaser unless the vendor is in a position at the time of the default to enforce specific performance, and that the vendor is not entitled to forfeit the contract for default in payment of the purchase money unless at the time of the default he is able to make a conveyance in accordance with the terms of the contract. *Getty* v. *Peters*, 82 Mich., 661, 46 N. W., 1036; *Auxier* v. *Taylor*, 102 Ia., 673, 72 N. W., 291.

In this case Schueler is in the position of seeking to enforce the provisions of his contract, which provided for liquidated damages, and the Wolo-

vecks are resisting such enforcement upon equitable grounds.

The practice of courts of equity, in a proper case, even in one where the parties have used the term liquidated damages, to construe such provision as a penalty only, and then grant relief, is based upon the power of such courts to relieve against forfeitures generally, and especially for non-payment of money; for forfeitures are said to be abhorrent in equity.

The rule generally recognized and enforced is that even where parties to a contract have in terms provided that the damages of the injured party for some particular breach, or for a total breach, of the contract, shall be a certain or ascertainable sum, which is specified as liquidated damages, still, if it is apparent that damages for such breach would not be uncertain as to amount, nor difficult of proof, and that the contract taken as a whole is so manifestly unreasonable and disproportionate as to negative the conclusion that it truly expresses the intention of the parties and is inconsistent with the conclusion that it was their intention that damages in the amount stated should flow from such breach, courts of equity will construe the provision as a penalty only, for the purpose of affording relief against the consequences of a forfeiture.

Where there is a contract duly entered into for the sale of improved real property, and the purchaser goes into possession, and where it is apparent from the contract that it was the intention of the parties that the rights under the agreement should vest at once upon its conclusion, subject to

be defeated or ended upon the nonperformance of a condition subsequent, then equity, by virtue of its jurisdiction over penalties and forfeitures, has power to relieve the defaulting party from the loss or forfeiture caused by this breach of such subsequent condition, and to afford that relief courts of equity in a proper case will construe the provision as to liquidated damages to be a penalty only. We regard the circumstances of this case as justifying the application of those equitable principles. Considering all the facts of this case, a court of equity should construe the provision of the contract as a penalty and not as liquidated damages, and upon that ground also the Wolovecks were entitled to be relieved against the consequences of the attempted forfeiture.

The vested beneficial interest of a vendee under a land contract may conceivably be much greater than the beneficial interest remaining in the vendor, as when the vendee has made large payments, or put improvements upon the property, or the property has greatly increased in value, and the relation of the parties has many points of similarity to the relation existing between a mortgagor and a mortgagee of real property.

It seems to be quite well settled that where provisions similar to the one in this contract have been inserted in mortgages of real estate, courts of equity have refused to enforce them by strict foreclosure, that is, by giving the mortgagor a reasonable time in which to pay up and then cutting off all his rights in the property if he fails to pay by the time set.

Some courts of equity have held that the pro-

vision of forfeiture in land contracts, the relation of the parties being so similar to that of mortgagor and mortgagee, will not be enforced by strict foreclosure, but that in land contracts, as in mortgages, if the defaulting party fails to pay at the time set by the court, instead of cutting off the rights of the vendee under the contract the property will be ordered sold as upon foreclosure.

While it cannot be said that the weight of authority sustains this proposition, we believe it to be equitable and sound.

At the time the judgment we are reviewing was entered in the court below, Ella F. Richards had established as against both Schueler and the Wolovecks her right to the posession of a part of the property, but the court nevertheless decreed that the Wolovecks should pay for the property according to the contract, although Schueler could not then give good title to the property, nor full possession of the same; and the decree took no notice of Schueler's inability to perform his part of the contract, nor was the performance ordered by the Wolovecks conditioned upon Schueler's performance of his part. Clearly, such a judgment was unwarranted and erroneous, and the same is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

PARDEE and FUNK, JJ., concur.