Holding these views, the judgments of the lower courts are hereby affirmed in the two error proceedings set forth above, and in the appealed case a decree may be entered for plaintiffs.

*Judgments and decree accordingly.*

LEVINE, P. J., and VICKERY, J., concur.

---

THE D. W. KAUFMAN REALTY CO. v. UNKNOWN
HEIRS OF LUCAS ET AL.

*Contracts—Termination—Reasonable provisions therefor enforced—Sale of real estate—Repossession by vendor after default in payments—Vendee in possession under resale may sue to quiet title.*

1. Where parties competent to do so make provision in a contract for its termination upon terms which are not unreasonable and harsh, but are equitable and just, it is the duty of courts to enforce the same.
2. Where land was sold on land contract, and the purchaser took possession, and later died, and the vendor thereafter took possession under the contract and resold said land on land contract, and delivered possession to the purchaser, the possession of such vendee is the possession of the vendor, within the meaning of the statute authorizing actions to quiet title.

(Decided April 17, 1925.)

APPEAL: Court of Appeals for Summit county.

*Mr. L. S. Bricker,* for plaintiff.
*Messrs. Mottinger & Evans,* for defendants.

WASHBURN, J. On November 2, 1915, Ernest Lucas purchased from the D. W. Kaufman Realty Company a lot, with a small house or "shack" thereon, for $375, paying $10 down and agreeing to pay taxes and interest and $5 per month until the balance of the purchase price was paid. The written contract entered into by the parties contained a provision that if any of the installments were not paid within 60 days after falling due, all of said installments should become due, at the election of the realty company.

It also provided that in case of default by the purchaser, the realty company could elect to treat the contract as void and re-enter and take possession of the premises and "be at liberty to sell the land and premises * * * and shall be entitled to hold out of the payments made hereon by second party the sum of $—— per month, for and during the time the said second party may have had possession of said premises under and by virtue of this contract, as payment for the use of the same, and also an amount sufficient to cover all the damages sustained by the first party by reason of the nonperformance of this contract by the second party, and shall not be required to return any of said payments until all such claims are adjusted and settled in full."

The amount of the monthly rental not being stated, a reasonable rental value would be implied.

Ernest Lucas went into possession under the

contract and made some small payments, and later his interest in the contract was transferred to his wife, Mary Lucas, by a decree of court in which she obtained a divorce from him.

Mary Lucas remained in possession and made a few small payments; she had two sons by a former marriage, who are the defendants in this action, both of whom were minors, the older one always having lived in another state, and the younger one having lived for a short time with his mother, after the divorce, but having left the state in the latter part of 1917 or early part of 1918 and remained out of the state since.

The mother died in March, 1918, the last payment having been made by her in September, 1917.

After her death, efforts were made by the realty company to communicate with the sons, one of whom became of age in 1919, and the other in 1921, but some letters written to them were returned, and they never replied to any of the letters or did anything in reference to the property, although the younger son was in Akron quite a while after his mother's death and disposed of the furniture which was in the house.

After the mother's death, the property was vacant for some time. Then the realty company re-entered and took possession, and by its conduct elected to cancel the contract. It later agreed to sell the premises to a third party for an amount equal to the sum remaining due under the contract.

The total amount paid by the Lucases was $110, and they occupied the premises for about three years, and the interest and taxes which they did not pay during that time amounted to more than $50. The reasonable value of the use of the prem-

ises while they occupied the same exceeds the total amount paid on the contract, and the property did not enhance in value to any considerable extent between the time of purchase and the time the realty company re-entered and took possession.

The realty company brought this action to quiet title in April, 1923, six years after the last payment was made and long after said sons had become of age.

On these facts we hold that the contract is binding and enforceable, and that, according to the terms of the contract, there is nothing due the sons, and that the realty company is entitled to have its title quieted.

The parties were competent to and had the right to make a contract providing for its termination upon terms which we do not find to be unreasonable and harsh, but fair and equitable.

There is nothing in this holding which is inconsistent with our decision in *Woloveck* v. *Schueler,* 19 Ohio App., 210, decided December 19, 1922, and it is justified by *Norpac Realty Co.* v. *Schackne,* 107 Ohio St., 425, 140 N. E., 480.

We further hold that the actual possession of the premises by the present vendee of the realty company is the possession of said realty company, within the meaning of the statute authorizing actions to quiet title. *Thomas* v. *White,* 2 Ohio St., 540.

A decree may be drawn quieting the title of the plaintiff realty company.

*Decree for plaintiff.*

PARDEE, P. J., and FUNK, J., concur.