**DOMINO, Plaintiff, v. DOMINO et al, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 620957. Decided June 20, 1951.

Howell, Roberts & Stapleton, Wilson G. Stapleton, Cleveland, for plaintiff.

Dan T. Miller, Lakewood, for defendant, Edward F. Carran, Sr.

Roudebush, Adrion, Sanborn, Brown & Corlett, Allen N. Corlett, Cleveland, for defendant, Clara J. Carran, et al.

David J. Miller, Cleveland, for defendant, Edward F. Carren, Jr.

Harry B. Olds, Jr., Cleveland, for defendant, Society for Savings.

Kitchen & Messner, Charles Kitchen, Cleveland, for defendants, Florence B. and William Kwait.

## OPINION

By HOOVER, J:

Does the mere commencement of a suit for divorce and alimony by a wife, where the petition neither describes nor seeks a right against any specifically designated property of the husband but prays generally for divorce and alimony, constitute lis pendens as against the husband's real estate so as to give any alimony that might ultimately be awarded, priority in such real estate over a lien of judgment taken by the husband's creditor while such divorce and alimony suit was pending? That is one of the important questions here.

This is a partition suit filed Dec. 14, 1950, involving a two family house on Glencairn Road in Shaker Heights. Plaintiff, Paul Domino, and defendant, Edward F. Carran, Jr., were tenants in common of the disputed realty when partition was filed. The latter's father, Edward F. Carran, Sr., is a defendant. We shall refer to them as "Junior" and "Senior." Senior asserts a lien on the undivided one-half interest of Junior, arising out of cognovit judgment taken by Senior against Junior on **September 18, 1950,** and a certificate of lien filed the **next day.**

Junior's wife is a defendant too. She denies the validity of Senior's alleged lien as against her claim for alimony for the reason that she, three days prior to Senior's taking the cognovit judgment, had in this court instituted a divorce and alimony suit against Junior and on the same day obtained personal service on Junior, namely, on **September 15, 1950.** She invokes the doctrine of lis pendens against Senior's judgment lien. Moreover, she claims that the cognovit judgment is invalid because it was fraudulently obtained, alleging that Senior and Junior conspired by means of said judgment to defraud her from obtaining a disposition of said realty in

the divorce and alimony action, and further alleging that Senior obtained said judgment from Junior on a fictitious, non-existent debt.

Senior denies fraud, and claims that even though service had been made in the divorce and alimony action three days before he took the cognovit judgment, lis pendens did not apply because the divorce and alimony petition did not describe or seek remedy against the Glencairn property or any specific property.

There are other questions in the case, but this opinion is confined to the dispute between Senior and Junior's wife, involving questions of fraud and of lis pendens.

We consider the fraud question first. The testimony shows that Junior wanted to buy a half interest in the disputed realty and did not have the money to do it; that he received $4,000 from Senior which was used in the purchase. Senior and Junior testified that it was a loan. To substantiate the loan, there were introduced in evidence (1) a check on the Central National Bank, dated November 25, 1946, in the amount of $4,000, on which Senior was maker and Junior was payee, and the back of which contains Junior's endorsement and the stamp of the Central National Bank dated **Nov. 25, 1946**; and (2) a cognovit note, dated **Nov. 25, 1946**, in the amount of $4,000, on which Junior was maker and Senior was payee, payable **November 25, 1949**, and bearing interest at two percent. Senior and Junior testified that the check and note were both delivered on the date which they both bear, November 25, 1946. This note was the one on which the cognovit judgment was taken.

In his opening statement, counsel for Junior's wife claimed that the note was not executed on the date that the note bears, but no witness was produced to support that statement. In fact, Junior's wife did not produce any witness—she did not even testify for herself. She attempted to make her case out by cross-examining Junior and Senior and producing exhibits that mostly had to do with the divorce case and the cognovit judgment case.

If there are any facts to support Junior's wife, it might be these. Senior never demanded payment of the note. Junior never paid anything on the note. Junior didn't remember whether, after the note was delivered, Senior ever said anything to Junior about Junior owing him money. After Junior separated from his wife, the first he heard about the note was when he received notice of the lien. When Junior applied for a loan at the Society for Savings in connection with the purchase of the house, he did not disclose that his father

was lending him $4,000. Senior knew Junior had an interest in this property. Senior and Junior were in regular close contact because they were in business together. Senior knew that Junior was having marital difficulties in 1950 and that he had separated from his wife in June, 1950. Junior had discussed his marital difficulties with Senior. They had talked about selling this house and giving Junior's wife half of his net proceeds. Though Senior denied knowing that Junior had been sued and served in the divorce action at the time he took the cognovit judgment, he had known that the divorce was probably coming. However, he said he did not know but what they would get together again as they had before.

The first important question is whether the $4,000 was a loan. We think it was. There is no doubt that Junior received $4,000 from Senior that went into this house and that Junior gave him a note therefor. The note bears the same date of the day the money was advanced, Nov. 25, 1946. There is testimony that the note was delivered the same day. There is none to the contrary. Witnesses testified that it was what it purpored to be—a loan. None testified to the contrary. No one testified that it was a gift. There is testimony that Junior's wife knew about the loan and note, and that Junior and his wife thanked Senior and said they would pay him back. Junior's wife did not take the stand to deny it. True, Junior had paid nothing on the note and Senior had not demanded payment, but Senior explained the reason—Junior was not able to pay so Senior did not demand payment. Countless parents could match this same predicament. Does a debt suddenly become a gift because a parent does not crush a struggling child? Not only parents, but countless other creditors have been lenient with debtors unable to pay. Humanitarian forbearance does not wipe out a debt.

With a valid debt to Senior established, where is the fraud? Is it fraud for a creditor to seek payment or to go to court to enforce payment simply because some one else is trying to collect from the same debtor or has already filed suit against him? That is just as absurd as saying that Junior's wife in suing for alimony is fraudulently trying to beat Senior out of his money—money that she knew was borrowed and went into this very house before she even thought of suing for alimony. Indeed, in discussing circumstances affecting allowance of alimony, it is said in 27 C. J. S., 957, Sec. 233:

"The obligations or debts of the husband should be considered, and deductions made from his income or property therefore, so that the rights of his creditors may not be defeated."

See also, 56 A. S. R. 853, 865 (note). Even assuming that when Senior took the cognovit judgment he knew that service had been made in the divorce and alimony suit, we find no fraud here.

We come now to lis pendens. Briefly stated, it is the rule that while an action is pending no one can acquire an interest in that action's subject matter to the prejudice of a litigant therein, whether that other person be an assignee, purchaser, lessee, mortgagee or other lienee. Junior's wife contends that her divorce and alimony action was pending at the time Senior took his cognovit judgment and acquired his lien on the Glencairn realty; that the Glencairn realty was the subject matter of her action; and that therefore, applying lis pendens, Senior's lien is inferior to her right of alimony in such realty.

Two tons of authority, falling like a high-drop or skull cracker in a steel plant, break her contention into a thousand pieces, for the reason that her petition in the divorce and alimony suit neither describes nor identifies nor seeks a right specifically against the Glencairn property. There is but a general prayer for alimony.

The general rule is that in order for lis pendens to apply to a particular piece of property in any kind of an action, that property must be specifically identified or described in the pleadings. 25 O. Jur. 671, Sec. 12; 34 Am. Jur. 379, Sec. 21; 54 C. J. S., 575, Sec. 6; 2 Pomeroy's Equity Jurisprudence (5th ed.) 743-744, Sec. 634 c; 1 Freeman on Judgments (1925) 1145, Sec. 535.

The handicap of lis pendens, like any contest, has its own rules. To win you must pick out a particular bird, then pick off that same bird. To discharge your blunderbuss at the whole flock without first naming a particular bird doesn't count.

The same requisite of particularity holds true in divorce and alimony cases. As stated in 2 Pomeroy's Equity Jurisprudence (5th ed.) 748, 749, Sec. 635:

"Among the most familiar instances in which the rule applies are * * * actions for divorce and alimony, where the disposition of property is involved, provided the complaint describes specific property and asks that it be set aside to the complainant; otherwise such action does not bind the property that may eventually be decreed as alimony."

Also: 1 Freeman on Judgments (1925) 1144-1145, Sec. 534; 17 Am. Jur. 431, Sec. 529; 54 C. J. S., 578, Sec. 11; Bennett on Lis Pendens (1887) 267-268, Sec. 219; Wade on Law of Notice (1886) 196, Sec. 352; 56 A. S. R. 853, 864-865 (note); Ann. Cas. 1913 D 950-951 (note); 14 Amer. Dec. 774, 777 (note); 166 A. L. R.,

406, 413-415 (anno); 66 A. L. R., 1473 (anno); 102 A. S. R., 700, 705-706 (note).

We have tried to track down every Ohio divorce and alimony case dealing with lis pendens and find that Ohio follows the general rule. In every case where lis pendens has been recognized the petition has described particular property. **Cook v. Mozer, 108 Oh St 30; Tolerton v. Williard, 30 Oh St, 579; Elmwood Place Loan & Bldg Co., v. Cincinnati Concrete Co., 6 Oh Ap, 43; Delaplane v. Delaplane, 84 Oh Ap, 165; Shively v. Shively, 88 Oh Ap, 7; Stone v. Equitable Mortgage Co., 25 Oh Ap, 382, 388-389;** Green v. Green, 23 C. C., 323; Fletcher v. Fletcher, 15 C. C., 271; John v. John, 12 C. C., 328, **Tripplehorn v. Cambron,** 15 O. L. R., 76; Parsons v. Ohio Pail Co., 6 C. C., N. S., 116; Hamilton v. Rudy, 4 N. P., N. S., 427; **Fourman v. Fourman, 20 O. O., 54;** 8 Univ. Cin. Law Rev. 80, 86 (note). In every case where no property was specifically described in the pleadings lis pendens was not recognized. **Hamlin's Lessee v. Bevans, 7 Ohio (pt. 1) 161; Conrad v. Everich, 50 Oh St, 476.** Counsel has cited and we have found no case recognizing lis pendens wherein no property was specifically identified in the pleadings.

Junior's wife relies on the following three statutes:

"**Sec. 11300 GC.** Lis pendens in general.—When the summons has been served or the publication made, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

"**Sec. 11990 GC.** Divorce for aggression of husband. When a divorce is granted because of the husband's aggression, the court shall, if the wife so desires, restore to her any name she had before such marriage, and allow such alimony out of her husband's property as it deems reasonable, having due regard to property which came to him by marriage and the value of his real and personal estate at the time of the divorce."

"**Sec. 11991 GC.** Alimony in such cases. Such alimony may be allowed in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or instalments, as the court deems equitable."

The answer to this contention is that because the divorce and alimony petition did not describe the Glencairn property that property did not become the subject of this action. True, if alimony were ultimately awarded it would be paid out of Junior's real or personal property; but so would any paying kind of judgment in any kind of case. If we were to declare

every case lis pendens wherein the judgment would be satisfied out of real or personal property, then most cases automatically would be lis pendens, and lis pendens as we have known it would be as extinct as the dodo. To be protected by lis pendens, property must be directly, not indirectly, affected. 56 A. S. R., 853, 864 (note). This point is well stated in a note in 102 A. S. R., 700, 705-706:

"Effect of Mere Commencement of Suit.—The question what effect the commencement of a suit for divorce has with respect to constituting notice that the property of the husband and wife is in litigation is naturally one involving the doctrine of lis pendens. 'In order to bring the doctrine of lis pendens into effect, it is indispensable that the litigation should be about some specific thing which must necessarily be affected by the termination of the suit. It does not apply to an action for divorce and for alimony to be paid out of the husband's estate because such a suit does not apply to any specified part of the husband's estate, real or personal. The judgment which may be obtained may, from the docketing thereof, constitute a lien on certain property; but in this, as well as in all other respects, it no more constitutes a lis pendens or a claim to particular estate than a suit upon a promissory note or any other sufficient cause of action. It is not sufficient that the judgment, unless otherwise paid, will be satisfied out of the sale of certain real estate. A mere suit to recover a money judgment does not prevent alienations by the defendant pendente lite unless it is in the enforcement of a lien on, or otherwise is directed against the title to, specific property;' Freeman on Judgments, sec. 196; Brightman v. Brightman, 1 R. I., 112; Hamlin v. Bevans, 7 Ohio, 161, 28 Am. Dec., 625; Feigley v. Feigley, 7 Md. 537, 61 Am. Dec. 375; Sapp v. Wightman, 103 Ill. 150; Daniel v. Hodges, 87 N. C., 95; Houston v. Timmerman, 17 Or. 499, 11 Am. St. Rep. 848. 21 Pac. 1037, 4 L. R. A., 716; Almond v. Almond, 4 Rand. (Va.) 662, 15 Am. Dec., 781.

It is argued that by reason of the above statutes, a pending suit for divorce and alimony automatically apprizes the world that plaintiff is going to seek satisfaction out of any and all of defendant's real estate,—and the world is warned to keep hands off of all of it. There are answers to this. It does not so apprize or warn the world any more than does a simple action for money judgment, yet lis pendens is not recognized as to the latter. Moreover, if by reason of these statutes lis pendens were automatically to apply to all of Junior's realty even though none is specifically described, then, by the same reasoning, lis pendens would apply to all of Junior's personal property on hand when suit was commenced. Must every bank

inquire from every depositor who wants to withdraw money whether he has a divorce and alimony case pending against him? Must every shoe shine boy take a quarter from Junior at his peril?

Assuming that Senior knew that this divorce and alimony suit was pending at the time he took the cognovit judgment, the result would be no different. If lis pendens applied, it would apply even if Senior didn't know it. Lis pendens does not depend on actual notice. **Cook v. Mozer, 108 Oh St, 30, 36-37.** Besides, even if Senior had read the petition it would apprize him only of the fact that a divorce and alimony suit had been brought which neither described nor sought redress specifically against the Glencairn property.

Junior's wife relies most heavily on **Cook v. Mozer, 108 Oh St, 30,** and its second syllabus, which reads:

"The doctrine of lis pendens has appropriate and special application in an action for divorce and alimony, especially, where the property directly involved and claimed is specifically described in the pleadings. (**Tolerton v. Williard, 30 Oh St, 579,** approved and followed.)"

She attaches great meaning to the word "especially;" interprets the syllabus to lay down the general proposition that lis pendens applies to divorce and alimony cases even where there is no specific description; and claims that the "especially" clause but indicates that the general proposition is merely given additional weight if the additional but dispensable fact of specific description is present. Analysis shows that the Cook case does not support such contention. Note that the syllabus says that the "doctrine" of lis pendens applies to divorce and alimony cases. That doctrine is a concept definitely known to the law and having definite and requisite component parts one of which is specific description. When the Court talks about the "doctrine" being applicable, it means the doctrine with all its components. This syllabus doesn't purport to set forth all the essential components of the doctrine of lis pendens. It merely emphasizes one of them for a reason we shall later note. The syllabus uses the "especially" clause in the same sense as an "especially" clause is used in a situation where a prospective passenger inquires of a conducter "Can I take this bus to the Public Square?" and the conductor replies, "Yes, especially if you pay your fare." That wouldn't mean that it could also be done without paying fare. The "especially" merely places a little additional emphasis on a thing that's necessary anyway.

Besides, as is so aptly stated in **Williamson Heater Co. v. Radich, 128 Oh St, 124, 126:**

"It is of course true that the syllabus of a decision of the Supreme Court of Ohio states the law of Ohio. However, that pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the Court. It cannot be construed as being any broader than those facts warrant. When obiter creeps into a syllabus it must be so recognized and so considered."

The proposition for which counsel contends was not presented or considered in the Cook case. There the property was specifically described. Nothing in the opinion supports counsel's contention. The Court not only emphasizes the fact that the property was "fully described in her petition" (p. 39) but it points out the way the Tolerton case distinguishes the Tolerton case from the Hamlin's Lessee case (p. 38):

"In that case (Hamlin's Lessee, supra), the court observe that the petition for divorce alleged no claim to any specific tract of land."

Finally, the opinion in the Cook case quotes 25 Cyc. 1459:

"Ordinarily a suit for divorce or to compel support, being of a personal nature, is not lis pendens; but a suit for divorce and alimony is lis pendens where the complaint describes specific property which is sought to be set apart to the complaining party or charged with the payment of the sum claimed, and where such relief may be granted in a proper case."

Since the Cook opinion labors so long over that distinction, it is no wonder that the specific description point was the only component of lis pendens that was given a special salute in the syllabus.

After Senior's lien had attached, Junior's wife filed an amended petition in her divorce and alimony action which for the first time specifically mentions the Glencairn property. The amendment locked the barn too late. Senior's lien had already run away with the Glencairn horse. In 54 C. J. S., 575, Sec. 6, it says:

"* * * a description of property in an amended petition does not relate back to the commencement of the action so as to affect intervening rights."

Also: 34 Am. Jur. 384, Sec. 29; 2 Pomeroy's Equity Jurisprudence (1941) 745-746, Sec. 634 d.

The Court holds that lis pendens does not apply and that Senior's lien is senior to the alimony claim.