SANFORD ET AL., APPELLEES, *v.* BREIDENBACH; NORTHWESTERN MUTUAL INS. CO., APPELLANT, ET AL.
SANFORD ET AL., APPELLANTS, *v.* BREIDENBACH ET AL., APPELLEES.
SANFORD ET AL., APPELLEES, *v.* BREIDENBACH ET AL.; INSURANCE CO. OF NORTH AMERICA, APPELLANT.

(Nos. 4970, 4976 and 4977—Decided May 25, 1960.)

*Messrs. Alpeter, Reed & Diefenbach,* for James R. Sanford and Bianchi R. Sanford.

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for Frederick R. Breidenbach and Northwestern Mutual Insurance Company.

*Messrs. Buckingham, Doolittle & Burroughs,* for Insurance Company of North America.

HUNSICKER, J. Three appeals, all arising from the same judgment below, have been submitted on the same briefs and arguments; the details of which are hereinafter set out at length.

On January 14, 1959, James R. Sanford and Bianchi R. Sanford, his wife, herein known as "Sanford," agreed in writing to sell to Frederic (herein impleaded as "Frederick") R. Breidenbach, herein known as "Breidenbach," certain lands in the village of Hudson, Summit County, Ohio, upon which lands was an 8-room, 1½ story, house and separate outbuilding. The agreed purchase price was $26,000. According to the terms of the contract, possession of the premises was to be delivered on transfer of the title, although Breidenbach did receive two keys to the house prior to its destruction by fire. He did enter the house with certain others, preparatory to having the heating system changed from oil heat to gas, to plan the location of furniture, and to show the new home to friends. Breidenbach also checked the oil tank to see if there was fuel to heat the house.

The written contract to purchase these premises had, on the reverse side thereof, the following provisions:

"The following paragraphs are an essential part of the contract on the reverse side hereof.

"January 14, 1959.

"1. A proper legal agreement signed by all owners concerned shall be furnished by the sellers giving permenant [*sic*] permission to use of the present septic system by the purchasers and their successors and assigns.

"2. It is understood that legal agreements covering driveway easement, easement for water line, etc., are in effect covering the thirty-acre properties. Said agreements shall be submitted to the purchasers for their approval prior to deposit of funds in escrow."

The parties who had signed the contract on its face also signed these provisions at the end thereof.

On February 16, 1959, while the papers necessary to a transfer of title were being prepared, the 8-room house on the lands was totally destroyed by fire. Breidenbach immediately instructed the Evans Savings Association, that was to loan him a part of the money needed to buy the home, not to file the deed for record. This deed, transferring the premises from Sanford to Breidenbach, had been prepared and placed in escrow with the Evans Savings Association pending a title search.

When Breidenbach executed the contract of purchase, he secured from Northwestern Mutual Insurance Company a policy of insurance to protect him against loss in the event the 8-room house was destroyed by fire. The amount of this insurance was $22,000.

Sanford had maintained insurance on these premises in the sum of $20,000. The agent from whom Sanford purchased insurance, in accord with standing instructions from Sanford, renewed this insurance coverage on December 26, 1958. On learning that the premises were being sold, this agent, through his employee, cancelled this policy without authority from Sanford, and without notice to Sanford. There seems to be no great question herein that the terms of such policy were in full force and effect at the time of the fire.

On April 29, 1959, Sanford brought an action in the Common Pleas Court of Summit County, Ohio, against Breidenbach, Northwestern Mutual Insurance Company, and Hudson Village Real Estate Co., Inc. Breidenbach had deposited, with the real estate company, $12,000 as a partial payment for the premises. This sum has been, by arrangement of the parties, placed in escrow with a third party, and the real estate company is to all intents and purposes no longer involved herein. The principal relief sought by this action was specific performance of the contract to purchase the lands of Sanford.

Breidenbach, by way of cross-petition, brought Insurance Company of North America into the action by alleging that such company had insured the Sanford home against fire, and that such company should be made responsible for the loss suffered by Sanford, or, if the premises are decreed to be the property

of Breidenbach, then his interest in the proceeds of the policy should be declared.

The Insurance Company of North America says, by way of answer, that it did, on December 26, 1958, renew the policy of insurance on these premises, but that, by agreement between the company and the insured, it was cancelled on January 26, 1959. It further alleged that Breidenbach never had any interest in such policy. As stated above, there seems to be no question now that this policy was in full force and effect at the time of the fire. The attempted cancellation of such policy was of no force or effect.

After a trial of the issues herein, the court determined that Sanford was not entitled to specific performance, but that he should recover from each insurance company for the loss of the premises.

The judgment against Northwestern Mutual Insurance Company is $11,523.81, being 22/42 of the loss, and the judgment against Insurance Company of North America is $10,476.19, being 20/42 of the loss. The court added the amounts of the two policies, and then proportioned the loss in accord with the ratio which each policy bears to such total.

It is from the judgments so entered that the following appeals have been taken: Northwestern Mutual Insurance Company appeals on questions of law in case No. 4970; Sanford appeals on questions of law and fact in case No. 4976; and Insurance Company of North America appeals on questions of law and fact in case No. 4977.

In case No. 4977, a motion to dismiss the appeal on questions of law and fact was filed, but we find no journal entry respecting that motion. Such motion is sustained, and the judgment against Insurance Company of North America will be considered as an appeal on questions of law.

Insurance Company of North America then moved that appeal No. 4970 be consolidated with appeals numbered 4976 and 4977; such company then moved that appeal No. 4976 be consolidated with appeals numbered 4970 and 4977; such company then moved that appeal No. 4977 be consolidated with appeals numbered 4970 and 4976. We find no journal entry determining such motions.

The motions to consolidate are overruled.

The disposition of each case shall be appropriately indicated at the conclusion herein. This court will, however, proceed to discuss the matters in one opinion.

We shall first direct our attention to the question of whether Sanford is entitled to specific performance, and shall therein consider whether Breidenbach was, under the doctrine of equitable conversion, the owner of the premises at the time the house was destroyed by fire. After a disposition of those questions, we shall then pass to the matter of the liability of the two insurance companies.

"A decree for the specific performance of a contract is not a matter of right, but of grace, granted on equitable principles, and rests in the sound discretion of the court." 37 Ohio Jurisprudence, Specific Performance, Section 20, at pp. 24 and 25, and authorities there cited.

The rule above set out is so well known that no authorities need be cited, and it is such rule that must be applied in the instant case. We have a contract herein for the sale and purchase of real property, which made definite mention of a septic tank easement. The easement is, by the language used by the parties, an essential part of the contract. At the time of trial, August 3, 1959, a satisfactory septic tank easement had not been submitted to the purchaser, Breidenbach. The septic tank agreement submitted in May, 1959, provided that under certain conditions the right to use this facility terminated, whereas the provision of the contract made no such exception.

It is apparent, therefore, that at the time when specific performance was sought in the trial court, one of the material parts of the agreement had not been complied with, and hence we had an uncompleted contract.

There are many cases where specific performance has been granted, even though there has been a failure to perform on the part of the one seeking to enforce the contract; yet the general rule is stated in 4 Pomeroy's Equity Jurisprudence, 1050, Section 1407, to be as follows:

"The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has

done or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms. * * *''

In *Rummington* v. *Israel*, 7 Ohio, Part II, 97, at page 101, the court said:

"* * * There is nothing in the character of contracts for the sale and purchase of lands, that places it in the power of either party to trifle with the other by violating a contract on his part, and then, at his own convenience, by offering to make compensation, compel a specific performance. In courts of law, time is considered as of the essence of all contracts, and courts of equity are as much bound to see that contracts are executed as courts of law. That man who would call upon a court of equity for a specific performance must, in the language of the books, show himself to have been '*ready, desirous, prompt, and eager.*' If, therefore, a vendor or vendee wish to compel the other to observe a contract, he immediately makes his part of the agreement precedent; for he can not proceed against the other without an actual performance of the agreement on his part, or a tender and refusal. * * *''

See, also, 81 Corpus Juris Secundum, Specific Performance, Section 111; 49 American Jurisprudence, Specific Performance, Section 40.

Some of the authorities have determined that literal and exact performance is not always necessary; but in the instant case we are dealing with real property, and when a deed is given in pursuance of a contract, there is a merger of the agreement into the deed, and an action cannot thereafter be maintained on such contract. *Dependabilt Homes, Inc.,* v. *Grant Wayne Co.,* 169 Ohio St., 224, 158 N. E. (2d), 358.

We therefore determine that specific performance cannot be decreed under the facts of this case.

Sanford insists that, even though specific performance may not lie, Breidenbach is to be considered in equity the owner of the premises; and, under the doctrine of equitable conversion, the loss, if any has ensued as a result of the destruction of the house by fire, must be placed upon Breidenbach and his insurer, Northwestern Mutual Insurance Company.

There are few cases in Ohio in which, in contracts for the sale and purchase of real property, the doctrine of equitable conversion has been discussed. Counsel have brought to our attention *Gilbert & Ives* v. *Port*, 28 Ohio St., 276; and *Oak Building and Roofing Co.* v. *Susor*, 32 Ohio App., 66, 166 N. E., 908; in which latter case the court, in following the pronouncement in *Gilbert & Ives* v. *Port, supra*, said:

"Where contract for exchange of real estate contained no provision as to who should bear the loss in case any building on either of properties should be destroyed before deeds were executed, the purchaser must be regarded as equitable owner of property, and loss by reason of fire destroying building before execution of deed falls on him."

This court, in a matter not similar to the instant case, said, in *Oberholtz* v. *Oberholtz*, 79 Ohio App., 540, 74 N. E. (2d), 574, at page 547, with reference to the doctrine of equitable conversion, as follows:

"We recognize the rule of equitable conversion as applied to contracts for the sale of real property—*viz.*, that under certain circumstances equity looks upon things agreed to be done as actually done, and that, when a contract is made for the sale of real property, the vendor, from the execution of such contract, holds the legal title to the lands as a trustee for the vendee, and the vendor's beneficial interest in the contract is treated for purposes of descent as personalty and as an asset of the vendor's estate to be administered by his executor or administrator."

An excellent collation of the authorities on the subject of "Vendor and purchaser: risk of loss by casualty pending contract for conveyance," with a discussion of the rules adopted by the courts in the several states, may be found in 27 A. L. R. (2d), 444 *et seq.*

In general, the rule under the doctrine of equitable conversion is that a contract to sell real property vests the equitable ownership of the property in the purchaser; and thus, where there is any loss by a destruction of the property through casualty during the pendency of the contract (neither party being guilty of causing the destruction), such loss must be borne by the purchaser.

We do not find herein that possession had been given to Breidenbach. The incidental checking of the oil level in the heating system, and the acceptance of the key to the premises, do not constitute a surrender of possession to the purchaser in this case.

The courts of Ohio have spoken with reference to the rights of a vendor and purchaser where the purchaser has gone into possession of the premises agreed to be conveyed, for in the case of *Coggshall* v. *Marine Bank Co.*, 63 Ohio St., 88, 57 N. E., 1086, at pages 96 and 97, Judge Spear cites with approval the statement from *Jaeger* v. *Hardy*, 48 Ohio St., 335, 27 N. E., 863—

"'* * * to the effect that a vendor's interest, before conveyance, 'is the legal title, and a beneficial estate in the lands to the extent of the unpaid purchase money,' while that of the vendee is 'an equitable estate in the land equal to the amount of the purchase money paid by him, and which, upon full payment, may ripen into a complete equity entitling him to conveyance of the legal title according to the terms of the contract,' " and then says:

"This language cannot be reconciled with the proposition that the purchaser is the full owner and the vendor a mere naked trustee, and if we adhere to the principle above quoted, as we must, the latter proposition must fail. Every just right of the vendee is protected by the rule that his ownership extends to the amount of the purchase money paid, and the right to receive a deed upon payment of the balance of the purchase money in compliance with the contract. Possession by the purchaser gives notice of his right to all the world, and of nothing more. * * *'"

The better rule in cases such as that now before us, we believe, is that equitable conversion by the purchaser, in a contract to convey real property, does become effective in those cases in which the vendor has fulfilled all conditions and is entitled to enforce specific performance, and the parties, by their contract, intend that title shall pass to the vendee upon the signing of the contract of purchase. The case before us does not meet any of these requirements.

In 4 Pomeroy's Equity Jurisprudence (5 Ed.), Section

1161a, the author, quoting from ''Chafee and Simpson, Cases on Equity,'' gives five rules concerning the risk of loss in contracts for the sale of real estate.

One of such rules, which we believe sustains our position herein, is stated by the author as follows:

'' 'That the risk of loss should be on the vendor until the time agreed upon for the conveyance of the legal title, and thereafter on the purchaser, unless the vendor is then in such default as to be unable specifically to enforce the contract.' ''

See, also, *Coolidge & Sickler, Inc.,* v. *Regn,* 7 N. J., 93, 80 A. (2d), 554, 27 A. L. R. (2d), 437, at 443.

It is hence our judgment that, since Sanford could not specifically enforce the contract of sale, and there was no intention expressed in the contract of purchase that the risk of loss should be on the vendee when the contract was executed by the parties, there is no basis to claim that equitable conversion existed, thereby placing the burden of loss by fire upon Breidenbach.

We now pass to the question of the liability of the respective insurance companies. As we have heretofore stated, Sanford had fire loss coverage in the amount of $20,000, with Insurance Company of North America as the insurer; Breidenbach, in order to protect whatever interest he had in such premises, secured a policy with a fire loss coverage of $22,000 with Northwestern Mutual Insurance Company.

It is our heretofore stated judgment that the policy of Insurance Company of North America is a valid and subsisting contract to indemnify Sanford for the loss he might sustain, if, as a result of fire, the house described in the policy was destroyed. This contract of insurance was not cancelled by the unilateral action of the agent for Insurance Company of North America.

At the time of the loss, Sanford was the owner of the premises, and hence the risk of loss must, in this case, fall upon him. With this view of the matter, it follows naturally that his insurer must respond under the terms of the policy for the face amount thereof.

Since we have determined that Sanford and not Breidenbach was the owner of the premises at the time of the fire, what, if any, interest did Breidenbach have in these premises?

It is true that he could have waived any defect in the title or a failure to give a septic tank agreement and insisted that the contract of sale be completed by a delivery to him of a deed to the lands. He did not, however, choose this course of action, but, since the subject matter of the contract was destroyed, he refused to accept delivery of a deed to the land. We have said, in effect, that he had a legal right to take this position.

Up to the moment when Breidenbach refused to complete the contract of purchase, he had an insurable interest in the premises. The contract of insurance with Northwestern Mutual Insurance Company insured Breidenbach and his legal representatives for loss by fire and other casualty; it did not insure Sanford or any other person except those "named in the policy." This policy which Breidenbach purchased was for his protection in the event he suffered a loss. Breidenbach did not suffer a loss: first, because all of the money he deposited in escrow, as a part of the purchase price for the premises, has been, or will be, returned to him under an agreement to that effect, made by the parties and Hudson Village Real Estate Company, Inc., the realtor herein; and, second, because by the judgment of this court he is not required to perform his contract. Inasmuch as Breidenbach suffered no indemnifiable loss in this matter, his insurer need not respond by way of money payment under the policy of insurance.

We do not believe that Section 3929.26, Revised Code, which covers the situation where there is more than one policy of insurance on the same property, is applicable to the facts of this case.

There can be no apportionment of loss between insurers in this case, because there was no loss applicable to an insurable interest held by Breidenbach which inured to the benefit of Sanford. The interest of Breidenbach in the property, we have indicated above, ceased, or was not effective, at the time of the loss; hence the insurance ended at the same moment. There being no loss to Breidenbach, and no interest of Sanford to be protected by the Northwestern Mutual Insurance Company policy, there can be no pro rata division of the proceeds of that policy.

We therefore determine herein, as to case No. 4976, that

specific performance must be denied and the petition dismissed, at the costs of the appellant.

In case No. 4970, the judgment entered against Northwestern Mutual Insurance Company is reversed and held for naught, and the appellant therein may go hence with its costs.

As to case No. 4977, which we consider herein as an appeal on questions of law only, we modify the judgment entered on December 15, 1959, by finding that Insurance Company of North America shall pay to Sanford, by reason of the destruction of the dwelling house situated on the premises described in the petition filed in the trial court, the sum of $20,000, with interest at the rate of 6% per annum from March 16, 1959.

*Judgments accordingly.*

DOYLE, P. J., and GRIFFITH, J., concur.

GRIFFITH, J., of the Seventh Appellate District, sitting by designation in the Ninth Appellate District.