KATZ et al., Appellants,

v.

BANNING et al.; Webb et al., Appellees.

[Cite as *Katz v. Banning* (1992), 84 Ohio App.3d 543.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP-365.

Decided Dec. 24, 1992.

*Fusco, Ison & Mathews* and *Michael J. Fusco,* for appellants.

*Vorys, Sater, Seymour & Pease, Michael G. Long* and *David B. Petrel,* for appellee BancOhio National Bank, N.A.

*Squire, Sanders & Dempsey, David J. Young* and *Gary M. Simon,* for appellees Bob Webb Builders, Inc., Robert A. Webb and Muirfield Greene Company.

*Thompson, Hine & Flory* and *Michael S. Yashko,* for appellee Thompson, Hine & Flory.

McCormac, Judge.

Plaintiffs-appellants, Dean Z. Katz and Katz Management Group, Inc. ("KMG"), appeal the summary judgment in favor of defendants-appellees, Bob Webb Builders, Inc., Robert A. Webb, and Muirfield Greene Company, and the summary judgment in favor of defendant-appellee, BancOhio National Bank ("BancOhio").

Plaintiffs commenced this action on April 17, 1987, by filing a complaint naming as defendants George W. Banning ("Banning"), G.W. Banning Associates, Inc., G.W.B. Associates Investment Company ("GWB"), John W. Hill, Charles R.

Johnson and Jonathan A. Tarbox (collectively referred to as "Banning defendants"). Plaintiffs alleged that the Banning defendants squeezed plaintiffs out of their interests in a joint venture by acquiring and developing certain real property with other partners to the exclusion of plaintiffs, even though plaintiffs expended time, effort and money in the alleged joint venture project.

Plaintiffs asserted numerous causes of action against the Banning defendants in their original complaint. Their prayer for relief essentially called for money damages; however, plaintiffs also prayed for imposition of a constructive trust on the real estate for their fifty percent interest.

The relevant sequence of events is as follows. In June 1985, Katz approached George Banning regarding a proposed joint venture involving the purchase and development of certain real estate located in Dublin, Ohio. At that time, this property was owned by Muirfield Ltd. On March 21, 1986, Banning and Katz, together acting under the name of "One Muirfield Place," entered into a purchase agreement with Muirfield Ltd. Banning and Katz each signed as general partner for One Muirfield Place. The purchase agreement expired on August 22, 1986, and, on October 2, 1986, it was extended to January 2, 1987. In late 1986, BancOhio was approached for an acquisition loan with respect to this property. The bank approved the loan on the condition that the borrowers come up with $400,000 in collateral. The Banning defendants advised Katz that they would not let him participate in the development of the Muirfield real estate unless Katz paid one half of the collateral required by the bank. He refused and the Banning defendants informed the bank that Katz was no longer in the deal. The Banning defendants then submitted a second loan application, which was approved.

The purchase agreement between One Muirfield Place and Muirfield Ltd. expired January 2, 1987, at which time Muirfield Ltd. transferred title to Professional Acquisition Corporation. On January 5, 1987, the Banning defendants contracted with Professional Acquisition Corporation for the purchase of the Muirfield real estate. Later that month, on January 29, 1987, GWB (composed of Banning, Tarbox, Johnson and Hill) purchased the property and gave a first mortgage to the bank. Katz did not express any objection to the bank regarding the loan and mortgage. Katz filed suit against the Banning defendants on April 17, 1987, but did not name BancOhio as defendant.

On September 30, 1987, Muirfield Greene Company ("Greene") was formed as an Ohio general partnership. On that same date, BancOhio consolidated the acquisition loan with a development loan and, with these proceeds, Greene purchased the real property from GWB. Greene was formed to develop the land. The partnership originally consisted of G.W. Banning Associates, Inc., William Sutterfield, and Bob Webb Builders, Inc. On October 19, 1989, GWB assigned its

interest to Bob Webb Builders, Inc. It is unclear whether Sutterfield remains a partner at this time.

On November 21, 1989, plaintiffs filed their first amended complaint, joining as defendants Bob Webb, Bob Webb Builders, Inc., William Sutterfield and Banc-Ohio. In the amended complaint, plaintiffs alleged four additional counts expressly asserting *"lis pendens "* as to the interest of all of the defendants in the Muirfield real estate. On January 5, 1990, the Webb defendants filed a motion to dismiss Katz's claims against them. The court converted the motion to dismiss to a motion for summary judgment in order to consider an attached affidavit. The court granted the Webb defendants' motion on May 29, 1991, upon finding that Katz had not raised any genuine issue of material fact. On June 14, 1991, the court entered its judgment entry dismissing defendants, Bob Webb and Bob Webb Builders, Inc., as parties at plaintiffs' costs.

On July 15, 1991, plaintiffs filed their second amended complaint, adding Greene as a defendant and reasserting claims against the previously dismissed Webb defendants. BancOhio, Greene and the Webb defendants moved for summary judgment on December 24, 1991, January 3, 1992, and January 3, 1992, respectively. Plaintiffs had previously (on February 9, 1990) moved for partial summary judgment from the alleged finding that a joint venture existed for the purpose of purchasing and developing the property, and that the Banning defendants had violated the terms of the joint venture. On February 20, 1992, the court entered its judgment granting summary judgment in favor of BancOhio, Greene and the Webb defendants. The court also overruled plaintiffs' motion for partial summary judgment on February 4, 1992, finding there to be material issues of fact as to the alleged joint venture and related violations. The summary judgments, which were granted, were made final and appealable by the addition of Civ.R. 54(B) language.

Plaintiffs appeal, asserting the following assignment of error:

"The trial court erred in granting the motions of defendants Bancohio National Bank, the Muirfield Greene Company, Bob Webb and Bob Webb Builders, Inc. for summary judgment when movants failed to establish that no genuine issues of material fact exist and that movants were entitled to judgment as a matter of law."

A motion for summary judgment under Civ.R. 56 will be granted only if, after construing the evidence in favor of the nonmoving party, (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party

bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

Plaintiffs allege that the trial court erred in finding the original complaint, filed April 17, 1987, insufficient to trigger the operation of the doctrine of *lis pendens,* and that summary judgment was therefore improper.

The common-law doctrine of *lis pendens* is codified in R.C. 2703.26, which reads:

"When summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

■ The Supreme Court in *Cook v. Mozer* (1923), 108 Ohio St. 30, 37, 140 N.E. 590, 591, identified the criteria which must be met in order to invoke this doctrine. These elements are as follows:

" ' * * * (1) The property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the *res;* and (3) the property or *res* involved must be sufficiently described in the pleadings. It may be added that the litigation must be about some specific thing that must be necessarily affected by the termination of the suit.' "

At issue here is whether or not the Muirfield property necessarily would be affected by the termination of the suit.

■ Courts have held that the property described in the complaint must be directly affected by the judgment in the pending suit. *Levin v. George Fraam & Sons, Inc.* (1990), 65 Ohio App.3d 841, 842, 585 N.E.2d 527, 528; *Stone v. Equitable Mtge. Co.* (1927), 25 Ohio App. 382, 388, 158 N.E. 275, 276; *Domino v. Domino* (C.P.1951), 60 Ohio Law Abs. 484, 489–490, 45 O.O. 151, 155, 99 N.E.2d 825, 829. Consequently, the property described "must be at the very essence of the controversy between the litigants." *Levin,* 65 Ohio App.3d at 846, 585 N.E.2d at 530.

In their original complaint, plaintiffs asserted causes of action for breach of fiduciary duty, fraud, breach of contract, negligent misrepresentation, promissory estoppel, unjust enrichment and constructive trust. The essence of these claims was the assertion that plaintiffs were wrongfully excluded from an alleged joint venture with the Banning defendants to purchase and develop the Muirfield real estate. The real estate in question essentially constituted a lost business opportunity. The property itself was not the essence of plaintiffs' complaint.

Plaintiffs' purchase contract expired before the conveyances were made to GWB and to Greene. Plaintiffs also acknowledged that they had never owned the property in question. Other than the prayer for a constructive trust, plaintiffs did not assert a right to the property.

Furthermore, judgment would not directly affect the property. As to eight of the nine claims, plaintiffs sought only money damages. "[I]f the object of the action is merely to recover a money judgment, there can be no *lis pendens*, though the cause of action may arise out of property specified in the petition or complaint * * *." *Stone*, 25 Ohio App. at 388, 158 N.E. at 276. In order to invoke doctrine of *lis pendens*, "[i]t is not sufficient that the property be the source out of which the plaintiff will be compensated." *Levin, supra*, 65 Ohio App.3d at 846, 585 N.E.2d at 530. Plaintiffs admitted in their motion for partial summary judgment that they "commenced this action * * * to recover compensatory and punitive damages as it relates to [Banning defendants'] breach of a joint venture * * *."

· Even if it were held that the doctrine of *lis pendens* technically applies to the property by virtue of the prayer for constructive trust on the real property, it does not of itself give plaintiffs rights superior to those who acquire an interest in the property during the pendency of the suit. *Lis pendens* is a procedural device to protect the status quo of the interest in the property and not a substantive right. *Levin, supra*, at 845 and 847, 585 N.E.2d at 529 and 531. The Banning defendants purchased the property in their own name after the purchase contract between Katz, Banning defendants and the seller had expired. Any wrongdoing resulting from this purchase would typically lead to an award of damages to compensate for this lost business opportunity. This, in fact, is what plaintiffs intended, which is evident from their motion for partial summary judgment filed more than two years after their original complaint was filed. Furthermore, this is precisely what the title insurance company insured against. BancOhio, in consolidating the acquisition loan (made two and one-half months prior to the filing of plaintiffs' original complaint) with the development loan, relied upon this insurance guarantee and upon the Banning defendants' representation that Katz was no longer a party to the transaction. Plaintiffs have acknowledged, both in their complaint and in Katz's affidavit, that the Banning defendants had authority to deal with the banks. BancOhio, therefore, was justified in relying upon the statement that Katz was no longer involved. Absent fraud or other wrongdoing, BancOhio should not be penalized by the subordination of its mortgage lien to any alleged interest of plaintiffs because it protected its security interests by consolidating an existing loan with a new loan intended to improve the value of the underlying collateral.

■ The doctrine of *lis pendens* is of equity origin. *Stewart v. Railway Co.* (1895), 53 Ohio St. 151, 160, 41 N.E. 247, 250. Therefore, the doctrine of *lis pendens,* embodied in R.C. 2703.26, is subject to equitable principles. A potential buyer whose purchase is frustrated ought not be able to render a bank's loan insecure absent a showing of fraud or actual wrongdoing, particularly where an alternative remedy is sought against the real source of the alleged wrongdoing. This principle also applies to innocent third parties who are bona fide purchasers for value, where the essence of the pending suit primarily, if not exclusively, sought money damages for an alleged wrongful exclusion from a failed joint venture.

■ Based on the foregoing reasons, we find that the allegations of the original complaint were insufficient to trigger application of the doctrine of *lis pendens.* The allegations necessary to support a decision denying defendants' motion for summary judgment as to *lis pendens* must have been included in the complaint filed April 17, 1987, as only it preceded the crucial events. The trial court did not err in granting summary judgment as to this issue.

■ Plaintiffs also allege that the bank's loan to Greene enabled GWB and the Banning defendants to hinder, delay or defraud plaintiffs by facilitating the conveyance from GWB to Greene. Upon review of the evidentiary material submitted, we find that the trial court correctly granted summary judgment. Plaintiffs have failed to produce evidence to meet their burden of production as required in *Wing.* Specifically, the record is devoid of evidence necessary to show that a genuine issue exists as to the following material factual elements required in R.C. 1336.04: existence of a debtor-creditor relationship and inadequate consideration. Furthermore, reasonable minds could come to but one conclusion, which is that knowledge of the complaint of April 17, 1987 did not amount to an actual intent to hinder, delay or defraud. Fraudulent intent is to be determined from the facts and circumstances of each case. *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 355, 480 N.E.2d 1121, 1123. Courts may look to inferences from circumstances and relationships of the parties involved. *Id.* Plaintiffs' purchase agreement and extensions had expired prior to all conveyances of the property. In addition, plaintiffs did not name BancOhio as a defendant in their original complaint, which was filed after the first loan was made. The Banning defendants informed the bank that plaintiffs were no longer in the deal. Given the relationship among the parties and the apparent authority vested in the Banning defendants to arrange financing, BancOhio was entitled to rely on the Banning defendants' representation. The title insurance guarantee is additional evidence negating any alleged intent on the part of BancOhio and Greene to hinder, delay or defraud plaintiffs' efforts to satisfy their claim to an

interest in the land. Summary judgment was, therefore, properly awarded to these defendants.

Plaintiffs claim an equitable lien superior to that of BancOhio. However, plaintiffs have failed to show the existence of an equitable lien. An equitable lien arises either from (1) a written agreement indicating an intent to make particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings. *Syring v. Sartorious* (1971), 28 Ohio App.2d 308, 311, 57 O.O.2d 477, 478, 277 N.E.2d 457, 459. There is no evidence of a written agreement showing an intention to create a lien against the Muirfield property in favor of plaintiffs. Plaintiffs rely on two cases as a basis for recognizing an equitable lien in favor of a vendee of a contract to purchase or sell real property. These cases, *Wayne Bldg. & Loan Co. v. Yarborough* (1967), 11 Ohio St.2d 195, 40 O.O.2d 182, 228 N.E.2d 841, and *Coggshall v. Marine Bank Co.* (1900), 63 Ohio St. 88, 57 N.E. 1086, held that monies paid toward the purchase price and under a pending purchase agreement constitute an equitable lien in the amount paid. Plaintiffs did not pay any part of the purchase price, and their contract to purchase the property expired prior to the inception of BancOhio's mortgage interest and prior to Greene's legal interest. Plaintiffs failed to come forward with evidence of wrongdoing on the part of BancOhio, Greene, or the Webb defendants. Consideration of the relation of the parties and the circumstances of their dealings does not justify imposition of an equitable lien in favor of plaintiffs. The trial court properly granted summary judgment as to this issue.

Plaintiffs have also asserted a claim for equitable conversion of their right to purchase the Muirfield property. Equitable ownership is recognized under the doctrine of equitable conversion where an executory contract to sell exists. *Gilbert v. Port* (1876), 28 Ohio St. 276, 292–293; *Sanford v. Breidenbach* (1960), 111 Ohio App. 474, 15 O.O.2d 179, 173 N.E.2d 702. "The rule is: Equity looks upon things *agreed* to be done as actually done" (emphasis *sic*), and "[e]quity only regards that done which was contracted to be done." *Gilbert, supra,* 28 Ohio St. at 296–297. By the terms of the purchase agreement, plaintiffs' right to purchase expired January 2, 1987. Any equitable interest terminated with the expiration of the contract. In a similar case, the court noted that "those equitable rights only exist while a contract binds the parties." *Graines v. Wald & Fisher, Inc.* (Mar. 31, 1988), Cuyahoga App. No. 53640, unreported, 1988 WL 36506. Plaintiffs have failed to meet their burden of production and summary judgment was, therefore, proper.

■ Plaintiffs also assert a claim for unjust enrichment because they allegedly conferred the following benefit: the opportunity to acquire and develop the Muirfield real estate which, at the time, had an appreciated market value. Unjust enrichment arises where the receipt by one person from another of a benefit and the retention of that benefit would be unjust. *McClanahan v. McClanahan* (1946), 79 Ohio App. 231, 233, 34 O.O. 549, 551, 72 N.E.2d 798, 799; *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 224, 14 N.E.2d 923, 927. More specifically, "[i]t is not sufficient for the [plaintiffs] to show that [they have] conferred a benefit upon the [defendants]. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that, as against [them], it would be unconscionable for the [defendants] to retain the benefit." *Cincinnati v. Fox* (1943), 71 Ohio App. 233, 239, 26 O.O. 61, 64, 49 N.E.2d 69, 73.

Plaintiffs have not met their burden of production required under *Wing* in order to deny a motion for summary judgment. There must be an unjust enrichment. Plaintiffs have not shown that they have a superior equity or that any alleged enrichment was unjust. Plaintiffs have not contributed any funds towards the purchase price. Plaintiffs' purchase contract had expired prior to the acquisition of BancOhio's mortgage interest and prior to any of the conveyances of the property. Defendants were bona fide purchasers for value. As against defendants, plaintiffs do not have a superior equity. Summary judgment as to this issue was proper.

Plaintiffs' conspiracy allegations are without merit. "[C]onspiracy cannot be made the subject of a civil action unless something is done which, in the absence of the conspiracy allegation, would give rise to a cause of action." *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 549 N.E.2d 1202. Plaintiffs' other claims of wrongdoing and inequity have failed; therefore, this claim must also necessarily fail.

■ Plaintiffs are not entitled to a constructive trust in the Muirfield real property. The Ohio Supreme Court has noted that a "constructive trust is, in the main, an appropriate remedy against unjust enrichment." *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 226, 9 OBR 565, 567, 459 N.E.2d 1293, 1295. Designed to prevent fraud or other inequity, constructive trusts create an equitable title in some other person, irrespective of the intention of the parties. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 171–172, 63 O.O.2d 262, 267–268, 297 N.E.2d 113, 119–121; *Newton v. Taylor* (1877), 32 Ohio St. 399, 408–409. As plaintiffs have failed to establish a claim for unjust enrichment, imposition of a constructive trust is inappropriate.

Plaintiffs alleged that they were not precluded from reasserting claims against defendants' Webb and the Webb Builders in their second amended complaint

because the original dismissal of the Webb defendants was not a final appealable order.

Determination of whether or not the judgment as to part of the action is final and appealable involves a two-step process. McCormac, Ohio Civil Rules Practice 2d (1992) 368, Section 13.17. "The first step is to determine whether the order which adjudicates part of the action is one of the three types of orders declared to be final by Revised Code § 2505.02. If the order meets that requirement, the next step is to determine if the requirements of Civil Rule 54(B) have been met." *Id.* at 368–369. An order is final and appealable only if the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02 are met. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64. Summary judgment as to some, but fewer than all of the defendants, will constitute a final order under R.C. 2505.02, which can be made final by the addition of express Civ.R. 54(B) language. McCormac, at 369; *Chef Italiano*, 44 Ohio St.3d at 88, 541 N.E.2d at 67; *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 96, 540 N.E.2d 1381, 1384. The court's original order dismissing defendants' Webb and Webb Builders did not contain the express language required under Civ.R. 54(B). Unless the express words, "there is no just reason for delay" appear where multiple claims and/or parties exist, the order is subject to modification and is not final or appealable. *Id.* at 96, 540 N.E.2d at 1384. The court, therefore, had the power to retry those issues, and plaintiffs were not precluded from asserting the same claims.

It is also noted that the court's order granting leave to amend did not restrict plaintiffs' ability to reassert claims or to add new claims against the Webb defendants. Leave was granted prior to the dismissal of Webb defendants. The court's discretionary power to grant or deny motions for leave to amend includes the power to impose conditions which will protect the other parties. McCormac, *supra*, at 222, Section 9.05. Furthermore, defendants Webb and Webb Builders did not show actual prejudice, which would have been an important factor in denying leave to amend as to them. *Id.* at 221, Section 9.04. In any event, the issue is moot, as the summary judgment of February 20, 1992 resolved all of the issues in favor of the Webb defendants for the reasons previously stated.

Plaintiffs' assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

Peggy Bryant and Deshler, JJ., concur.