JOURNAL ENTRY and OPINION
Plaintiff Directory Services Group is a division of an advertising agency that creates and places for its clients advertisements in the local yellow pages telephone directory. Some of Directory Services's clients were franchisees of defendant Staff Builders International, Inc., a provider of home health care and temporary medical support personnel for hospitals and doctors. When Staff Builders canceled those franchises and took over their operation, Directory Services sent advertising invoices to Staff Builders. Staff Builders refused to pay for the former franchisees' advertising, so Directory Services brought this unjust enrichment claim. The court found that Directory Services did not have a binding contract with Staff Builders, and that it could not avail itself of the equitable remedy of unjust enrichment because it did not knowingly confer a benefit upon Staff Builders. The issues raised in this appeal contest the court's judgment.
The court's factual findings are undisputed, although we stress that any factual dispute would be resolved most favorably to sustaining the court's findings of fact. See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. The franchise agreement between Staff Builders and its franchisees required the franchisees to list their businesses in both the yellow pages and white pages telephone directories. Directory Services specializes in directory listing services by researching placements within telephone directories, creating advertising copy and coordinating publication of the advertisements. It signed contracts with 6100 Cleveland, Inc., 6100 Columbus, Inc., and ATC Staffing Services (the 6100 Group), all franchisees of Staff Builders, in which it agreed to pay the telephone directory publisher directly and then invoice the franchisees. Payments for advertisements were spread over a twelve-month period. At no time did Directory Services have a contract with Staff Builders.
Staff Builders terminated the franchise agreements and assumed the operation of each franchise as it was compelled to eliminate any possible gaps in service previously assumed by its franchisees. The 6100 Group failed to pay their invoices and did not cancel advertisements. Within a month after the last franchise had been terminated, Directory Services began submitting invoices to Staff Builders. Staff Builders refused to pay and canceled the advertisements. By this time, however, it was too late to remove the advertising from the most recent edition of the telephone directories, so those advertisements ran without Directory Services receiving payment. Directory Services claimed a total loss of $61,729.19.
A party may be entitled to damages under the concept of unjust enrichment when the court implies a promise to pay a reasonable amount for services rendered where a party has conferred a benefit on another without receiving just compensation for his or her services. Liberty Mut. Ins. Co. v. Indus. Comm. (1988), 40 Ohio St.3d 109, 110-111. In unjust enrichment, damages are conferred in the amount the defendant benefited. National City Bank v. Fleming (1981), 2 Ohio App.3d 50, 57.
Directory Services first complains that the court erred by defining the elements of unjust enrichment to require that Directory Services knew about Staff Builders and that Staff Builders would receive the benefit.
In Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183, the Ohio Supreme Court cited to Hummel v. Hummel (1938), 133 Ohio St. 520,525, for the observation that liability in quasi-contract arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain * * *. The court went on to state the elements of a quasi-contract case as follows: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (`unjust enrichment'). See, also, Dixon v. Smith (1997), 119 Ohio App.3d 308,317-318.
In conclusions of law, the court stated the elements of an unjust enrichment claim as follows:
 1. To establish an unjust enrichment claim, a plaintiff must show: a) a benefit conferred by a plaintiff upon a defendant; b) knowledge about the defendant of the benefit [sic.]; and c) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. * * *
Part (b) of the court's statement of the elements is obviously a typographic error not a misstatement of the applicable elements of an unjust enrichment claim. Our conclusion here is reinforced by the court's citation to Hambleton, which all agree sets for the correct statement of law on this point.
Directory Services next maintains the court's further statement of law to the effect that equitable remedies are not available to circumvent the provisions of an express contract is misplaced because Directory Services recognizes that it did not have a contract with Staff Builders. We think the court was merely setting forth a general statement of the law applicable to claims of unjust enrichment and not making any finding that Directory Services could not avail itself of the remedy of unjust enrichment because it had a contract with the 6100 Group companies.
The more substantive arguments put forward by Directory Services are that the court erred by finding that Directory Services knowingly conferred a benefit upon Staff Builders and Directory Services failed to establish that it would be unjust for Staff Builders to retain the benefit of the advertisements without paying for them.
We can accept the proposition that Staff Builders did receive some indirect benefit from the advertising, but we do not believe it to be the kind of direct benefit sufficient to enrich a party in a sense contemplated by an unjust enrichment claim. It is true that Staff Builders required its franchisees to advertise in telephone directories, but there was no evidence that Staff Builders personally placed any advertisements. We suppose an argument could be made that advertising which bolsters the franchisee's operation would have some positive impact for the franchisor, but there was no evidence to prove this point. And even if there was evidence that franchisee advertising had some beneficial effect, we think that benefit would be truly subordinate to the benefit derived by the franchisees the parties that actually contracted for the advertising.
The law requires not only that a party be enriched, but that the enrichment be unjust. In other words, enrichment alone will not suffice to invoke the remedial powers of a court of equity. Because Directory Services is seeking the equitable remedies available under a claim of unjust enrichment, it must show a superior equity so that it would be unconscionable for Staff Builders to retain the benefit. See Katz v. Banning (1992), 84 Ohio App.3d 543, 552.
Under the circumstances, we see no evidence to show that any ancillary benefit received by Staff Builders would be so unjust or unconscionable that Staff Builders should be obligated to pay for it.
The evidence showed that Directory Services considered invoices due and owing on the closing date of publication; that is, the last date on which changes could be made to submissions within the directory. Directory Services backdated 6100 Group's invoices to the publication date, but did not send those invoices for some time after the publication date, sometimes as many as seven months later. The 6100 Group companies stopped paying their invoices in the beginning part of 1998. Directory Services gave the 6100 Group a few months before it started questioning them about their failure to pay. At that point, Directory Services learned that the 6100 Group was in transition and that invoices were to be paid by the Staff Builders corporate offices. The term transition was euphemistic, for the three franchises had been terminated in April, June and July 1998. Nevertheless, Directory Services sent some of those invoices to the Staff Builders' corporate offices even after the franchises had been terminated. Staff Builders asked Directory Services to cancel the advertising, but it was too late the directories had been published.
Given this evidence, we cannot say the court erred by finding Staff Builders was not unjustly enriched. We see nothing to show that Directory Services has the superior equity such that it would be unconscionable for Staff Builders to retain the benefit without just compensation. The evidence showed the franchisees had the obligation to advertise and they entered into contracts with Directory Services. It is undisputed that Staff Builders was not a party to the contracts. Directory Services agreed to spread out payments for up to twelve months, knowing that once the close date of publication passed, it would be unable to cancel any advertising. So it left itself open to the possibility that a client could default and it would have no meaningful recourse in the event, as here, a client became financially unable to pay. Directory Services presumably knew this would be a possibility given its billing policy, and apparently considered any possible losses as an acceptable cost of doing business.
Finally, a party seeking the equitable remedy of unjust enrichment must come to the court with clean hands. It is therefore a fundamental rule of equity that he who seeks equity must do equity. Klaustermeyer v. Cleveland (1913), 89 Ohio St. 142. Directory Services admits that it bore the entire cost of advertising, see Appellant's Brief at 10, and then issued invoices which were amortized over a twelve-month period to ease the burden of payment. Id. In seeming contravention of this policy, however, Directory Services back-dated some of the invoices, a tactic that caused Staff Builders to mistakenly pay some of those invoices. Directory Services argued to the court that Staff Builders' mistaken payment put them on the hook for the entire amount. Directory Services has wisely dropped this argument on appeal, but we note that the court could validly look askance at the argument and decide that Directory Services lacked the necessary bona fides to qualify for equitable relief since the improper back-dating permitted Directory Services to benefit, however briefly, from its own error a classic example of a party coming to equity with unclean hands. The assigned errors are overruled.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ MICHAEL J. CORRIGAN, JUDGE:
JAMES D. SWEENEY, P.J., and PATRICIA A. BLACKMON, J., CONCUR.