[Cite as *Sorrell v. Micomonaco*, 2017-Ohio-1498.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| CHARLES A. SORRELL, | : | |
| | | CASE NO. CA2016-07-060 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 4/24/2017 |
| - vs - | | |
| | : | |
| CONSTANDINO A. MICOMONACO, et al., | : | |
| | | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 13 CV 84361


David A. Chicarelli, 614 East Second Street, Franklin, Ohio 45005, for plaintiff-appellee

Constandino A. Micomonaco, 1507 Eaton Avenue, Middletown, Ohio 45004, defendants, pro se

Thomas G. Eagle, 3400 North State Route 741, Lebanon, Ohio 45036, for appellant, AAM Properties, LLC


**M. POWELL, J.**

## I. FACTUAL AND PROCEDURAL POSTURE

{¶ 1} Defendant-appellant, AAM Properties, LLC ("AAM"), appeals from a judgment of the Warren County Court of Common Pleas finding that lis pendens applied to AAM's acquisition of certain real property, and ordering that the conveyance of the property to AAM

be rescinded and that the prior owner specifically perform a contract to convey the property to plaintiff-appellee, Charles Sorrell ("Sorrell").

{¶ 2} The Micomonaco family has owned three adjoining parcels of real property for more than 40 years. During many of those years, Fred Micomonaco and Justin Micomonaco operated Micomonaco Pizza upon the property. Fred eventually sold his interest in the pizzeria to Justin, who continued the business. At some point, Justin conveyed the property to his wife, Joan, and himself as trustees of the Micomonaco Family Trust ("the Trust"). The Trust beneficiaries included Justin's and Joan's children, Constandino Anthony Micomonaco ("Tony") and Kimberly Micomonaco. After Justin passed away, Tony continued the pizzeria for several years. Eventually, the business failed and the pizzeria was closed. Apparently, Tony and Kimberly became successor trustees of the Trust after the passing of their parents.

{¶ 3} In 2013, Tony was contemplating selling the Micomonaco property. Tony approached Sorrell, who owned adjacent property upon which he operated a car wash, and inquired if Sorrell was interested in purchasing the Micomonaco property. Sorrell was noncommittal. Tony proceeded to list the property for sale with First Realty Group, Ltd. and local relator, Jim Beatty. After the property was listed for sale, Beatty contacted Sorrell about the property. Sorrell made an offer to purchase and Tony, as trustee of the Trust, accepted the offer. Sorrell and Tony each signed a written contract dated May 30, 2013, pursuant to which Sorrell agreed to purchase the property for $90,000. Sorrell paid a $1,000 earnest money deposit in accordance with the contract. Closing was originally scheduled for June 14, 2013. However, the parties executed an addendum to the contract, extending the closing to July 18, 2013. The parties eventually agreed to close on June 30, 2013.

{¶ 4} Subsequently, Fred (Tony's uncle) contacted Sorrell, told him that the property should stay in the Micomonaco family, discouraged Sorrell from proceeding with the purchase, and indicated he intended to acquire the property himself. However, Sorrell

declined to release the Trust from the purchase contract. Thereafter, on June 27, 2013, despite the pendency of the purchase contract between Sorrell and the Trust, Fred contracted with the Trust to purchase the property for $90,000.

{¶ 5} Sorrell attended the scheduled June 30, 2013 closing for his purchase of the Micomonaco property. However, Tony did not attend and the closing did not occur. Tony claimed he did not attend the closing because Sorrell failed to pay him an agreed additional amount of $40,000 that was not provided for in the purchase contract.

{¶ 6} On July 8, 2013, Sorrell filed a "Complaint For Specific Performance" against Tony individually and as trustee of the Trust. The complaint sought a judgment ordering that the Trust specifically perform the purchase contract and for incidental money damages. Tony filed a pro se answer on behalf of himself and, presumably, on behalf of the Trust.

{¶ 7} On August 19, 2013, during the pendency of Sorrell's specific performance lawsuit, the Trust conveyed the Micomonaco property to AAM. AAM is a Fred Micomonaco family business. Fred testified he orally assigned his interest in his contract to purchase the property to AAM at the August 19, 2013, closing. The closing statement reflects that $20,000 of the purchase price paid by AAM was not disbursed to the Trust, but was retained "to deal with legal issues."

{¶ 8} Upon learning that AAM had acquired the property, Sorrell filed an amended complaint, incorporating by reference the allegations of the original complaint and naming AAM as an additional party defendant. Among other claims, the amended complaint alleged that the conveyance of the property to AAM was fraudulent.

{¶ 9} Sorrell then moved for default judgment against the Trust. The trial court ordered that Tony's answer be stricken as to the Trust, because Tony was not an attorney and therefore could not legally represent the Trust. Ultimately, the trial court granted default judgment against the Trust, but as to liability only.

- 3 -

{¶ 10} Settlement negotiations ensued between Sorrell and AAM. However, no settlement came to fruition. In the interim, AAM's counsel was permitted to withdraw and new counsel was substituted on AAM's behalf.

{¶ 11} On April 14, 2014, believing that AAM had reneged upon an agreed settlement, Sorrell moved the trial court to enforce the settlement. The trial court granted Sorrell's motion and ordered that the Micomonaco property be conveyed by AAM to Sorrell. AAM moved for reconsideration, or alternatively, for findings of fact. The trial court denied reconsideration and issued findings of fact. On July 16, 2014, the trial court issued a judgment entry ordering enforcement of the settlement and conveyance of the property from AAM to Sorrell. AAM appealed to this court. On April 13, 2015, we reversed and remanded the case to the trial court. *See Sorrell v. Micomonaco*, 12th Dist. Warren No. CA2014-07-096, 2015-Ohio-1417.

{¶ 12} On remand, each side moved for summary judgment. The trial court denied the respective motions for summary judgment and the case proceeded to a trial before a magistrate. The magistrate recommended judgment in favor of Sorrell and against Tony, the Trust, and AAM. Specifically, the magistrate found that Sorrell had a binding contract to purchase the Micomonaco property, the Trust breached the purchase contract, and lis pendens applied to AAM's acquisition of the property as it occurred during the pendency of Sorrell's specific performance suit. The magistrate then recommended that the transfer of the property to AAM be rescinded and that the purchase contract between Sorrell and the Trust be specifically performed. The magistrate rejected Sorrell's claim of fraud, but found that "the equities of this transaction do not favor granting any special consideration to AAM Properties as a third party buyer."

{¶ 13} AAM filed objections to the magistrate's decision. On July 1, 2016, the trial court overruled AAM's objections and adopted the magistrate's decision. The trial court found that the Micomonaco property was not conveyed to AAM until August 19, 2013, after

Sorrell had filed suit, Sorrell's purchase contract did not expire but rather was breached by the Trust, and lis pendens protected Sorrell's interest in the Micomonaco property because the outcome of Sorrell's specific performance suit affected the ownership interests of the property. The trial court concluded, "In sum, lis pendens operated to bind AAM by the outcome of the suit between Mr. Sorrell and [the Trust], AAM took title subject to the outcome of the suit, * * * damages are an inadequate remedy, and specific performance is appropriate."

{¶ 14} AAM now appeals, raising the following assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN VOIDING THE APPELLANT'S PURCHASE AND GRANTING SPECIFIC PERFORMANCE.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED IN APPLYING LIS PENDENS.

{¶ 19} Assignment of Error No. 3:

{¶ 20} THE TRIAL COURT ERRED IN NOT ACCOUNTING FOR APPELLANT'S EXPENSES IN THE PROPERTY.

## II. INTRODUCTION

{¶ 21} In its first two assignments of error, AAM argues the trial court erred in ordering specific performance and in finding that AAM's acquisition of the Micomonaco property is subject to the doctrine of lis pendens. AAM advances multiple reasons in support of these assignments of error.

{¶ 22} Specifically, AAM argues that specific performance is an inappropriate remedy because (1) the Trust is not subject to an order of specific performance as it has conveyed the property to AAM and, therefore, can no longer specifically perform the contract; (2) an award of money damages is an adequate remedy for the Trust's breach of the contract; (3)

the contract between Sorrell and the Trust had expired at the time the property was conveyed to AAM; and (4) Fred had a privilege to purchase the property based upon a long-standing understanding of the Micomonaco family that the property would be offered to Fred if Justin's family decided to sell.

{¶ 23} AAM further argues that lis pendens does not apply to its acquisition of the property because (1) Sorrell does not have or claim any title to the property; (2) the pendency of a lawsuit seeking specific performance of a contract to convey real property does not invoke the doctrine of lis pendens; and (3) AAM acquired its interest in the property before Sorrell filed his complaint for specific performance, by virtue of Fred's June 27, 2013 contract with the Trust to purchase the property and the understanding of the Micomonaco family that Fred have a first right to purchase the property.

{¶ 24} We will address AAM's various arguments in turn. We note that most of AAM's arguments do not consider the interaction of specific performance with lis pendens. However, the issues of whether specific performance is an available remedy after property is conveyed to a third party, and whether a lawsuit seeking specific performance invokes lis pendens are necessarily related and will be considered together.

### III.    SPECIFIC PERFORMANCE AS AN APPROPRIATE REMEDY

{¶ 25} No argument is raised concerning whether the Trust breached its contract with Sorrell. The issue before us concerns the remedy for the breach of the contract. The trial court ordered specific performance of the purchase contract and rescission of the conveyance of the Micomonaco property from the Trust to AAM.

{¶ 26} Ohio Jurisprudence describes the nature of specific performance as follows:

> Specific performance of contracts is an equitable remedy, and an action for specific performance is an equitable action. The remedy of specific performance of contracts is a well-recognized and important branch of jurisprudence but one that generally is available only to protect contract rights.

The remedy of specific performance requires a part[y] to provide performance specifically as agreed. The purpose of the remedy is to give the one who seeks it the benefit of the contract in specie by compelling the other party to the contract to do that which was agreed -- to perform the contract on the precise terms agreed upon by the parties. Hence, a decree for specific performance is nothing more or less than a means of compelling a party to do precisely that which ought to have been done without the court's coercion.

* * *

Specific performance is not a remedy that may be sought on all contracts; ordinarily, where a contract is breached by one party, the other party is limited to an action for damages for breach; however, if such damages do not provide an adequate remedy, an action for specific performance may lie.

84 Ohio Jurisprudence 3d, Specific Performance, Section 1 (2016).

### A.    Money Damages as an Adequate Remedy for Breach of a Contract

{¶ 27} Generally, when money damages may adequately compensate one damaged by a breach of contract, specific performance should not be ordered:

Specific performance of a promise that is the basis of a contract is a form of equitable relief. The remedy of specific performance is available when the promisor's failure to perform constitutes a breach of the * * * contract, and a remedy for the breach which is ordinarily available at law, such as money damages, will not afford the promisee adequate relief for a loss arising from the breach.

*Gehret v. Rismiller*, 2d Dist. Darke No. 06CA1705, 2007-Ohio-1893, ¶ 14.

{¶ 28} Typically, one who seeks specific performance bears the burden of establishing that legal remedies, such as money damages, are inadequate. AAM argues that Sorrell failed to carry this burden. However, there is an exception to these general rules when the breach of contract involves the failure to convey real property:

Specific performance is only available where there is no adequate remedy at law. In the case sub judice, appellee presented absolutely no evidence on the issue of why there was no legal remedy -- e.g., damages -- which could adequately compensate him. Generally, in the absence of such evidence a

- 7 -

court must assume that a legal remedy exists and refuse to grant specific performance.

There is an exception to that affirmative duty to prove that no legal remedy is adequate. "[W]here land is the subject matter of the agreement, the jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing the inadequacy of a legal remedy in the particular case." "Contracts involving interests in land * * * generally are specifically enforced because of the clear inadequacy of damages at law for breach of contract."

(Internal citations omitted.) *Gleason v. Gleason*, 64 Ohio App.3d 667, 672 (4th Dist.1991).

{¶ 29} As to the availability of specific performance as a remedy for the breach of a contract to convey real property, the common pleas court in *Dickman v. Wood*, 13 Ohio N.P. 271, 1912 Ohio Misc. LEXIS 144 (1912), observed that

The court is well aware that ordinarily contracts for the sale of real estate in the absence of fraud, misrepresentation or undue influence, or substantial inadequacy of consideration, are enforced in equity without regard to the purposes for which such real estate may be desired by the purchasers, because the market value of real estate is ordinarily such that damages for non-performance of a contract to sell are difficult to estimate at law.

*Id.* at 275. *See also Eichman v. Marshall*, 38 Ohio Law Abs. 398, 405 (2d Dist.1942) ("decisions are very numerous and uniform that in contracts for the sale of real estate, the claim of adequate remedy at law, [in] the absence of special circumstances will not avail").

{¶ 30} The exception to the general rule is particularly applicable in this case. The Micomonaco property had singular value to Sorrell, distinct from its monetary worth, because it was adjoining other property he owned and upon which he operated his car wash business. Sorrell's acquisition of the Micomonaco property allows him to expand his existing business and establish complimentary businesses with the convenience of operating and servicing the business or businesses at a single location. Valuation of those opportunities and conveniences is difficult, if not impossible, rendering money damages clearly inadequate to

compensate for the Trust's breach of its contract to sell the Micomonaco property to Sorrell.

{¶ 31} AAM cites *Katz v. Banning*, 84 Ohio App.3d 543 (10th Dist.1992); *DeSantis v. Soller*, 70 Ohio App.3d 226 (10th Dist.1990), *Fehrman v. Ellison*, 32 Ohio App.2d 258 (12th Dist.1971); *Dartron Corp. v. Uniroyal Chem. Co.*, 917 F.Supp. 1173, (N.D.Ohio 1996); and *Waddell v. Reed*, 4th Dist. Scioto No. 1373, 1983 Ohio App. LEXIS 11739 (Jan. 26, 1983), in support of its argument that money damages is an adequate remedy in this case.

{¶ 32} *Katz* does not address whether specific performance is appropriate in a suit for breach of a contract to sell real property. In fact, specific performance was never sought as a remedy in that case. Rather, *Katz* involved a plaintiff who sued for being excluded from a joint venture involving the purchase and development of real property. The appellate court found that the subject of the suit was not real property, but rather a lost business opportunity for which money damages is an adequate remedy. The appellate court further noted that, with the exception of a prayer for a constructive trust, the plaintiff sought only money damages.

{¶ 33} In *DeSantis*, specific performance was denied in favor of an award of money damages because the property had been conveyed to a third party prior to the filing of the lawsuit. In addition, following its conveyance, the property had been materially altered and substantially improved with the construction of a four-unit apartment building. In view of the intervening conveyance (and the material alterations to the property), the appellate court did not discuss whether the adequacy of money damages rendered specific performance inappropriate. The instant case factually differs from *DeSantis* in that the conveyance to AAM occurred after Sorrell had filed his complaint, thus implicating lis pendens.

{¶ 34} *Fehrman* is factually similar to *DeSantis* and equally inapplicable here. Specific performance was denied in *Fehrman*, not because money damages was an adequate remedy, but because there was a non-fraudulent conveyance of the property to a third party

prior to the filing of the lawsuit.

**{¶ 35}** Specific performance was denied in *Dartron* because the breach of contract involved the failure to perform a promise collateral to the conveyance of the property. Specifically, the seller had agreed to remove hazardous waste from the property prior to conveyance and failed to do so. The federal district court found that money damages was an adequate remedy for the seller's failure to remove the hazardous material, as opposed to ordering the seller to remove the hazardous material.

**{¶ 36}** Due to its factual similarity with the case at bar, *Waddell* is the most germane case cited by AAM in support of its argument. In *Waddell*, the seller conveyed the property to a third party five years after the buyer had filed suit seeking specific performance of his contract to purchase the property. The third party then conveyed the property to a fourth party some two years later. The trial court rejected specific performance and awarded money damages. In affirming, the appellate court did not find that specific performance was inappropriate because an award of money damages was an adequate remedy, but rather based its holding upon the equities of the case: "The trial court did not ignore lis pendens nor specific performance but found * * * that where equitable principles require it, a party will be denied equity and left to remedy at law." *Waddell*, 1983 Ohio App. LEXIS 11739 at *4.

**{¶ 37}** Although the *Waddell* court did not discuss the "equitable principles" it was referring to, it is fair to assume that the buyer's failure to diligently prosecute his suit to judgment for approximately seven years, during which time the property was twice conveyed, was a primary consideration. By contrast here, the magistrate's decision recommending judgment in favor of Sorrell, which was adopted by the trial court in its judgment entry "as if fully rewritten herein," stated that "the equities of this transaction do not favor granting any special consideration to AAM Properties as a third party buyer."

**{¶ 38}** Based upon the foregoing, we find that an award of money damages was not

an adequate remedy for the Trust's breach of its contract to sell the Micomonaco property to Sorrell.

## B.    Expiration of Sorrell's Contract

{¶ 39} AAM argues that at the time the Micomonaco property was conveyed to it on August 19, 2013, Sorrell's purchase contract had expired as there was no closing on or before July 18, 2013, as provided in the purchase contract addendum.

{¶ 40} As stated earlier, Tony and Sorrell agreed to close on June 30, 2013. Prior to that scheduled closing, Sorrell paid the earnest money deposit specified in the purchase contract. He then attended the closing, prepared to pay the balance of the purchase price. However, the closing did not occur because Tony failed to attend. The trial court found that Sorrell had performed all his obligations under the contract and was ready, willing, and able to close. Tony claimed he did not attend the closing because Sorrell had failed to pay an additional $40,000 beyond the purchase price specified in the contract. By adopting the magistrate's decision, the trial court found that Tony's excuse for failing to close was not credible.

{¶ 41} In addressing this issue, the trial court remarked:

> AAM asserts that the magistrate erred by failing to recognize that the contract between Mr. Sorrell and Micomonaco Family Trust was expired. However, the Court finds that the contract did not expire, it was breached by Micomonaco Family Trust. This is an important distinction. All parties appeared at the closing as contemplated by the contract, ready to close, except for Mr. Micomonaco. The Court finds no merit to AAM's contention that the contract expired and somehow became unenforceable simply because it was breached by the other party.

{¶ 42} The trial court's rejection of Tony's professed excuse for failing to attend the closing and its finding Sorrell complied with his obligations under the contract are factual determinations entitled to our deference and should not be disturbed absent an abuse of discretion. *See Unger v. Unger*, 12th Dist. Brown No. CA98-02-003, 1999 Ohio App. LEXIS

- 11 -

1622 (Apr. 12, 1999); *First Place Bank v. Stamper*, 8th Dist. Cuyahoga No. 80259, 2002-Ohio-3109.

{¶ 43} We therefore find the trial court did not abuse its discretion in finding that Tony was unjustified in failing to attend the closing, and that consequently, Sorrell's purchase contract had not expired but rather was breached by the Trust.

**C.      Fred's Privilege to Purchase the Micomonaco Property**

{¶ 44} AAM asserts it had a privilege to buy the Micomonaco property because from the time Fred sold the property to Justin, there was a long-standing understanding in the Micomonaco family that the property would be offered back to Fred if the family intended to sell it. There is no evidence that this understanding was ever reduced to writing or that there was any public recording of Fred's right to purchase the property.

{¶ 45} Initially, AAM may not vicariously assert whatever interest or rights Fred may have had based upon this purported informal Micomonaco family understanding. AAM, as an LLC, has a separate legal existence from Fred. Although there was evidence that Fred assigned his right to purchase the property, pursuant to his June 27, 2013 contract with the Trust, to AAM on August 19, 2013, there was no evidence that Fred assigned to AAM any rights he may have had pursuant to this purported Micomonaco family understanding. Therefore, based upon the record, any rights of AAM to purchase the property do not pre-date Fred's June 27, 2013 contract to purchase the property from the Trust.

{¶ 46} The informal Micomonaco family understanding that Fred have a right of first refusal to purchase the property is unenforceable and entitled to no legal recognition. First, the interest Fred claims in the property may not be asserted against Sorrell as it was not publicly recorded. R.C. 5301.25(A) provides that

> All deeds, land contracts referred to in division (A)(21) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands,

tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. *Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.*

(Emphasis added.) *See Bishop v. Rice*, 2d Dist. Montgomery No. 21247, 2006-Ohio-1131 (under R.C. 5301.25, an unrecorded land contract is fraudulent as to a subsequent purchaser who has no knowledge of it); *Deutsche Bank Natl. Trust Co. v. Hill*, 5th Dist. Perry No. 14 CA 00021, 2015-Ohio-1575.

{¶ 47} Further, the Micomonaco family understanding falls within the statute of frauds and is unenforceable. R.C. 1335.04 provides that

No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

In turn, R.C. 1335.05 provides that

No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

*See ELM Invests., Inc. v. BP Exploration & Oil, Inc.*, 10th Dist. Franklin No. 10CVH-12-18955, 2012-Ohio-2950 (agreements that do not comply with the statute of frauds are unenforceable); *Cairelli v. Brunner*, 10th Dist. Franklin No. 15 AP 854, 2016-Ohio-5535 (a claim regarding any interest in land, e.g., a right of first refusal, must be in writing and cannot be brought, as a matter of law, unless the agreement pertaining thereto was reduced to writing, signed by the party to be charged, and produced).

{¶ 48} AAM cites *Donald G. Culp Co. v. Reliable Stores Corp.*, 14 Ohio App.3d 161 (10th Dist.1983); *Arms Trucking Co. v. Fannie Mae*, 11th Dist. Geauga No. 2014-G-3186, 2014-Ohio-5077; *Spring Indus. v. Nicolozakes*, 5th Dist. Tuscarawas No. 2000AP010001, 2000 Ohio App. LEXIS 5521 (Nov. 21, 2000); *In re Gettys*, 205 B.R. 515, (Bankr.S.D. Ohio1997) (S.D.Ohio 1997); and *Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125 (6th Cir.1992), for the proposition that Sorrell was not entitled to specific performance because AAM had a privilege to buy the property. However, these citations are all tortious interference with contract cases and deal with whether the unjustified interference element of the tort is satisfied. Sorrell does not assert a tortious interference claim against AAM. Whether a third party is justified in interfering with contract performance has no bearing on whether, as between the contracting parties, specific performance is an appropriate remedy for breach of the contract, especially where lis pendens applies.

{¶ 49} We therefore find that AAM had no right or privilege to purchase the Micomonaco property superior to that granted Sorrell pursuant to his purchase contract.

## IV.    LIS PENDENS

### A.    Lis Pendens, Generally

{¶ 50} R.C. 2703.26 provides:

> When a complaint is filed, the action is pending so as to charge a third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title.

{¶ 51} The Ohio Supreme Court has described the doctrine of lis pendens as follows:

> It has been said that it is essential to the existence of a valid and effective lis pendens that three elements be present: (1) The property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the res; and (3) the property or res involved must be sufficiently described in the pleadings. It may be added that the litigation must be about some specific thing that must be necessarily affected by the termination of the suit.

*Cook v. Mozer*, 108 Ohio St. 30, 37 (1923).

{¶ 52} Lis pendens is therefore an exception to the general rule "that one not a party to a suit is not affected by the judgment." *Id.* at 36. While the doctrine does not prevent a third party from transacting an interest in the property during the pending lawsuit, it does notify third parties that they take the property "subject to the judgment or decree, and [are] conclusively bound by the result of the litigation as if [they] had been a party thereto from the outset." *Id.* The purpose of lis pendens is to protect the plaintiff's interest in the subject property. *Irwin Mtge Corp. v. DuPee*, 197 Ohio App.3d 117, 2012-Ohio-1594, ¶ 10 (12th Dist.).

### B.     Is a Contract to Purchase Real Property Sufficient "Title" to Invoke Lis Pendens?

{¶ 53} AAM argues that lis pendens applies only in instances where the plaintiff has some actual "title" <u>at the outset of the litigation</u>, and does not apply where the plaintiff's claim is based solely upon an executory contract to purchase the property.

{¶ 54} Accepting AAM's argument would result in a significant abridgment of contract rights and the availability of specific performance as a remedy in suits for breach of contracts to sell real property. Indeed, a vendor of real property, with impunity, may avoid specific performance merely by conveying the property to a third party, even after suit has been filed. In such an instance, the vendee would be limited to a claim for money damages and the vendor may sell to a third party for the same or a higher price.

{¶ 55} AAM cites *Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*, 150 Ohio App.3d 728, 2002-Ohio-7078 (1st Dist.), for the proposition that the application of lis pendens is dependent upon the plaintiff having title to the property subject of the suit at the time the suit is filed.

{¶ 56} *Cincinnati Reds* involved a taxpayer suit against the city of Cincinnati

- 15 -

concerning unpaid rent for a sports stadium pursuant to the city's lease with the Cincinnati Reds. Subsequently, the city conveyed the stadium to Hamilton County. The plaintiff claimed lis pendens permitted him to proceed with his taxpayer's action against Hamilton County. The First Appellate District found that lis pendens was inapplicable. Quoting from *Cincinnati Reds*, AAM asserts that the plaintiff's claim was rejected in that case because "[n]ormally, lis pendens involves * * * a plaintiff with title to the subject property." *Cincinnati Reds* at ¶ 35. However, explaining further, the appellate court stated that lis pendens did not apply because the plaintiff's interest, as a taxpayer seeking to protect public funds, was merely monetary and "was not a property interest." *Id.* at ¶ 36. The appellate court further found that Hamilton County was not a third party acquiring an interest as against the plaintiff's alleged title, as what was at issue was the collection of a debt which did not directly affect the property at issue, and that therefore, lis pendens "was never in the game." *Id.*

{¶ 57} AAM also cites *Bradford v. Reid*, 126 Ohio App.3d 448 (1st Dist.1998), to support its argument that Sorrell's purchase contract was not sufficient "title" under R.C. 2703.26 to invoke lis pendens. *Bradford* involved a property-owner plaintiff who had conveyed his property to a friend as part of an oral arrangement to facilitate a bank loan. When the relationship soured, the plaintiff sued only for money damages, claiming breach of an oral contract. The plaintiff also recorded an "affidavit of interest" with the county recorder which repeated the claim for money damages set forth in his complaint. During the pendency of the suit, the friend-defendant conveyed the property to a third party. The plaintiff voluntarily dismissed his suit and refiled an action to include the third-party purchaser. The plaintiff argued that lis pendens applied as against the third-party purchaser.

{¶ 58} The trial court granted summary judgment to the third-party purchaser and the plaintiff appealed. In affirming, the First Appellate District found that neither the plaintiff's complaint nor his affidavit of interest invoked lis pendens because each sought only

monetary damages and thus, did not make a claim affecting title to the property. *See Bradford* at 452 ("An action for money damages only is not subject to the doctrine of lis pendens"). The First Appellate District reiterated the Ohio Supreme Court's description of lis pendens set forth above.

**{¶ 59}** *Bradford* is factually dissimilar to the instant case. Sorrell's complaint sought specific performance of the purchase contract, not money damages, and therefore implicated the title to the Micomonaco property.

**{¶ 60}** In *Levin v. George Fraam & Sons, Inc.*, 65 Ohio App.3d 841 (9th Dist.1990), the Ninth Appellate District described application of lis pendens as follows:

> The notice of lis pendens as contained in the pleadings does not of itself give the plaintiff rights in the property superior to those who acquire an interest in the property during the pendency of the suit. The final judgment rendered by the court ultimately determines the priority of rights in the property.

*Id.* at 847.

**{¶ 61}** *Levin* involved a suit for money damages for breach of a land installment contract. The plaintiff sought payment from separate property owned by the defendant. During the pendency of the suit, the defendant conveyed the property to a third party. The plaintiff filed a supplemental complaint and sought application of the doctrine of lis pendens against the third-party purchaser. The Ninth Appellate District rejected application of lis pendens on the ground a suit for money damages does not directly affect title to the property. *Levin* factually differs from the instant case and is inapplicable here because Sorrell's suit, which seeks specific performance and not money damages, directly affects title to the property.

**{¶ 62}** In *Buckner v. Bank of N.Y.*, 12th Dist. Clermont No. CA2013-07-053, 2014-Ohio-568, we commented upon the "title" a plaintiff must claim to invoke lis pendens, stating, "The purpose of lis pendens is to protect *the plaintiff's interest in the subject property*." *Id.* at

¶ 30. (Emphasis added.)

{¶ 63} These various cases disclose two themes regarding the nature of "the plaintiff's title" as the phrase is used in R.C. 2703.26.

{¶ 64} First, "plaintiff's title" is used in a broad sense to refer to a claimed interest in real property and is not restricted to legal title.

{¶ 65} Second, "plaintiff's title" also refers to the "title" that is ultimately adjudicated by the trial court. Otherwise, R.C. 2703.26 would make no sense. Indeed, the "plaintiff's title" is necessarily in dispute at the time suit is commenced, and the parameters of the "plaintiff's title" remain undefined until a final judgment is rendered. Lis pendens charges third-party purchasers with notice of the pending suit and warns such third parties that interests acquired by them during the pendency of the suit are subject to the court's adjudication of the rights of the litigants to the property. *DuPee*, 197 Ohio App.3d. 117 at ¶ 9-10.

{¶ 66} Based upon the foregoing, we find that Sorrell's interest in the Micomonaco property pursuant to his purchase contract and the trial court's adjudication of that interest constituted "title," as used in R.C. 2703.26.

### C. Did AAM's Interest in the Property Vest prior to the Filing of Sorrell's Lawsuit?

{¶ 67} AAM argues that lis pendens does not apply because AAM acquired its interest in the Micomonaco property on June 27, 2013, when Fred contracted with the Trust to purchase the property, before Sorrell filed his lawsuit.

{¶ 68} AAM cites *Solomon v. Harwood*, 8th Dist. Cuyahoga No. 96256, 2011-Ohio-5268, in support of its claim that a third party's contract to purchase real property is sufficient interest to avoid lis pendens if the contract pre-dates the filing of the suit.

{¶ 69} In that case, Solomon contracted to purchase certain property from Harwood. Pending closing of his purchase, Solomon occupied the property and made improvements.

However, Solomon was not able to arrange financing to complete his purchase of the property and his contractual right to purchase expired. Thereafter, Harwood contracted to sell the property to the Mustafas. Solomon filed suit against Harwood and the Mustafas and claimed that the Mustafas' interest in the property was subject to lis pendens.

**{¶ 70}** The appellate court rejected Solomon's lis pendens claim for two reasons. First, the court noted that lis pendens did not apply based upon the allegation in Solomon's complaint that the Mustafas acquired their interest in the property prior to the filing of his lawsuit.[1]

**{¶ 71}** Second, the court found that even if lis pendens did apply, it "does not prevent persons from transacting an interest in the property subject to litigation; rather, any *conveyed interest* becomes subject to the outcome of the pending litigation." (Emphasis added.) *Solomon*, 2011-Ohio-5268 at ¶ 39.

**{¶ 72}** By approvingly citing *Cincinnati Reds* that lis pendens is applicable to the "conveyed interest," the *Solomon* court recognized that pre-existing contract rights to purchase real property do not avoid the application of lis pendens to an interest in the property that may be conveyed pursuant to the contract, after the filing of suit.

**{¶ 73}** Here, Sorrell and Fred/AAM each had a contractual right to purchase the Micomonaco property pursuant to their contracts. AAM sought no adjudication of the respective rights of Fred/AAM and Sorrell to purchase the property. Lis pendens did not affect Fred's contract to purchase the Micomonaco property. However, Sorrell's pending specific performance suit did invoke lis pendens as to any "conveyed interest" acquired by

---

1. AAM asserts the appellate court found that the Mustafas acquired their interest in the property before Solomon filed suit. However, the court made no such factual finding, but merely relied upon Solomon's admission in his complaint that the Mustafas acquired their interest in the property prior to the filing of his lawsuit. Furthermore, there is no discussion of the exact nature of the Mustafas' "interest." Therefore, the court made no finding that the Mustafas' contract to purchase was sufficient pre-existing interest to avoid lis pendens. *Uebel v. Edgewood City School Bd. Of Edn.*, 12th Dist. Butler No. CA2003-10-257, 2004-Ohio-2487, ¶ 13 (statement in pleadings are judicial admissions).

AAM upon the closing of Fred's contract to purchase. As the appellate court stated in *Levin*, it is the trial court's judgment that determines the priority of rights in the property. *Levin*, 65 Ohio App.3d at 847. AAM retains its rights pursuant to its contract with the Trust. However, the remedies available to AAM to enforce those rights are bounded by the lis pendens effect of the trial court's judgment ordering specific performance of Sorrell's purchase contract.

**{¶ 74}** We therefore find that a third party's right to purchase a property, contracted prior to the filing of a suit to adjudicate the plaintiff's interest in the same property, does not avoid the application of lis pendens to the conveyance of the property to the third-party purchaser subsequent to the filing of the plaintiff's action.

## V.     SPECIFIC PERFORMANCE AND LIS PENDENS

### A.     Does the Doctrine of Lis Pendens Preserve Specific Performance as an Available Remedy for Breach of a Contract to Sell Real Property where the Real Property has been Conveyed to a Third Party Prior to Judgment?

**{¶ 75}** As stated earlier, AAM avers that specific performance of a contract to convey real property may not be sought when the seller has engaged in a conveyance of the property to a third party. *See DeSantis*, 70 Ohio App.3d at 239, and *Fehrman*, 32 Ohio App.2d at 261-262. AAM further avers that cancellation of the conveyance to a third party to facilitate specific performance will generally be denied absent fraud in the conveyance. *Fehrman* at 260 ("The cancellation of deeds is one of the heads of equity jurisdiction indispensable to reciprocal justice. The ground for such relief is the fraud or injustice the circumstances show would be inflicted upon the party requesting the relief which could not be avoided except for the intervention of equity").

**{¶ 76}** AAM cites numerous other cases to stand for either or both of these two general propositions that specific performance is not an available remedy following conveyance of the property to a third party and that the conveyance to the third party will not

be cancelled absent a finding of fraud in the conveyance. However, none of the cases cited by AAM considers the interaction of lis pendens and specific performance.

{¶ 77} The only case cited by AAM involving a situation where real property was conveyed to a third party during the pendency of an action for specific performance of a contract to convey the same property is *Waddell*. As discussed above, *Waddell* involves denial of specific performance and application of lis pendens, not because either was generally inapplicable, but because of the unique equities of the case. "Lis pendens and specific performance are equitable in nature. Neither will be applied to achieve an unjust result." *Waddell*, 1983 Ohio App. LEXIS 11739 at *4. Therefore, *Waddell* does not hold that lis pendens and specific performance may never be appropriate where real property is conveyed to a third party during the pendency of a suit for specific performance. As we also noted in our discussion of *Waddell*, the trial court here specifically found that the equities of the instant case did not favor AAM.

{¶ 78} In *Gunlock v. Z.B.P. Pshp.*, 12th Dist. Clermont No. CA97-05-047, 1997 Ohio App. LEXIS 4378 (Sep. 29, 1997), this court considered a plaintiff's lawsuit filed against a seller for breach of a real estate contract. Gunlock sued Z.B.P. for breach of the contract, seeking a declaratory judgment concerning the rights of the parties regarding the contract, an injunction prohibiting Z.B.P. from conveying or contracting to convey the property to a third party during the pendency of the suit, and money damages. Gunlock also filed a "Notice of Lis Pendens" with the county recorder. Z.B.P. moved for partial summary judgment regarding the application of lis pendens and for an order quashing the "Notice of Lis Pendens." The trial court granted Z.B.P.'s motion for partial summary judgment and quashed the "Notice of Lis Pendens." Gunlock appealed. On appeal, we rejected Z.B.P.'s argument that the order quashing the "Notice of Lis Pendens" was not a final appealable order, finding that

- 21 -

> The order to quash the 'Notice Lis Pendens' affected a substantial right in a special proceeding because [Gunlock's] ability to demand specific performance could be affected if Z.B.P.] sold the property. Without lis pendens, [Z.B.P.] could sell the property to a third party, and the third party would take the property without the property being subject to the outcome of the suit.

*Id.* at *5-6.

{¶ 79} Notwithstanding the foregoing, we ultimately found that the trial court's order quashing the "Notice of Lis Pendens" was proper, and thus the trial court did not err in finding lis pendens did not apply, because Gunlock sought only money damages and "[a]n action for money only is not with[in] the doctrine of lis pendens." *Id.* at *9-10.

{¶ 80} In *Gunlock*, we plainly recognize that lis pendens is indispensable to the preservation of specific performance as a remedy for breach of contracts to purchase real property. Otherwise, we would not have found that the order quashing the "Notice of Lis Pendens" was a final appealable order affecting Gunlock's substantial right to seek specific performance were the property subsequently conveyed to a third party.

{¶ 81} AAM employs convoluted logic in construing *Gunlock* as supporting the proposition that actions for specific performance do not invoke lis pendens. AAM's argument is that Gunlock sought specific performance by requesting an injunction against alienating the property during the pendency of the suit, and that in finding that the "Notice of Lis Pendens" was properly quashed, this court essentially held that suits for specific performance do not invoke lis pendens. AAM misconstrues our holding. As discussed above, we found no error in the trial court's refusal to apply lis pendens specifically because Gunlock was seeking only money damages, and not specific performance.

{¶ 82} Apparently, there are no cases which consider whether an action for specific performance of a contract to purchase real property invokes lis pendens. However, the general principles supporting lis pendens can lead to no other conclusion. As the First

District explained in *Cincinnati Reds*,

> Lis pendens is a legal doctrine -- literally "a pending lawsuit." It means that the filing of a lawsuit concerning specific property gives notice to others of the claim alleged in the lawsuit; and that a purchaser of the property may take the property subject to the outcome of the lawsuit.
>
> Lis pendens is not a substantive right. It does not create a lien, but "charges the purchaser with notice of the pending action." If applicable, it does not prevent persons from transacting an interest in the property subject to litigation. Any conveyed interest, however, becomes subject to the outcome of the pending litigation. The purpose of lis pendens is to protect the plaintiff's interest in the subject property. Under the doctrine, "no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."
>
> As this court explained in *Bradford v. Reid*, "Lis pendens requires the following: (1) the property be of a character subject to the rule; (2) the court have jurisdiction over both the person and the res; (3) the property be sufficiently described in the pleadings; and (4) the property be directly affected by the judgment in the pending suit.' To be directly affected, the property must be 'at the very essence of the controversy between the litigants."

*Cincinnati Reds*, 150 Ohio App.3d 728 at ¶ 30-32.

{¶ 83} Additionally, "Lis pendens is a procedural device to protect the status quo of the interest in the property." *Katz*, 84 Ohio App.3d at 549.

{¶ 84} Sorrell had a contractual interest to purchase the property. The property was directly affected by Sorrell's specific performance suit, as Sorrell is entitled to legal title to the property should he prevail in the litigation. Maintaining the status quo, i.e., the Trust's ability to convey the property to Sorrell, was essential to the vindication of Sorrell's rights. The foregoing may only be accomplished if the conveyance of the property to AAM is subject to lis pendens. Where the requisites for lis pendens are otherwise satisfied, we find that a suit for specific performance of a contract to convey real property invokes the doctrine of lis pendens.

{¶ 85} AAM also argues that cancellation of the deed from the Trust to AAM is

improper absent a finding of fraud in the conveyance. As set forth above, lis pendens is not a substantive right and does not prevent a third party from acquiring an interest in real property during the pendency of a lawsuit concerning the property. Doing so is not fraudulent. However, R.C. 2703.26 provides that during the pendency of such a lawsuit, "no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title." A finding of fraud is unnecessary to cancel the conveyance to a third party, because the conveyance is subject to the court's judgment. Simply put, a finding of fraud is not a prerequisite to the application of lis pendens.

{¶ 86} Based on the foregoing, we find the trial court did not err in ordering specific performance and in finding that AAM's acquisition of the Micomonaco property is subject to the doctrine of lis pendens. AAM's first and second assignments of error are accordingly overruled.

## VI. REIMBURSEMENT OF AAM'S EXPENSES IN MAINTAINING THE PROPERTY

{¶ 87} In its third assignment of error, AAM argues it is entitled to be reimbursed by Sorrell for the expenses it has incurred in maintaining the property after it acquired it from the Trust. Specifically, AAM seeks reimbursement for amounts it expended for taxes and lawn maintenance.

{¶ 88} First, AAM did not establish these claimed damages with enough specificity to permit the trial court to determine their precise measure. *See Woehler v. Brandenburg*, 12th Dist. Clermont No. CA2011-12-082, 2004-Ohio-7142; *Haddox v. Moreland*, 4th Dist. Pickaway No. 95CA20, 1996 Ohio App. LEXIS 3380 (Aug. 5, 1996). Fred testified that AAM paid taxes upon the property during the pendency of this litigation, but did not state an exact amount. Fred testified that the taxes AAM paid were "$2,400, somewhere around there." As to lawn maintenance Fred testified that AAM paid $35 "every time he cuts it," that the grass was cut every ten days, and that he leaves it up to the person cutting the grass to decide how

often to mow. Even if AAM was entitled to reimbursement for its maintenance of the property, the evidence provides no basis for a measure of the damages.

{¶ 89} Additionally, AAM did not file a counterclaim against Sorrell for reimbursement of expenses incurred for its maintenance of the property.

{¶ 90} Finally, the equities do not favor reimbursement of AAM for its expenses. AAM has had the possession and use of the property during the pendency of this protracted litigation. AAM acquired the property with full knowledge that Sorrell had a contract to purchase the property and had sued to vindicate his right to do so.

{¶ 91} AAM's third assignment of error is overruled.

## VII. CONCLUSION

{¶ 92} Based upon the foregoing, the judgment of the trial court is affirmed.

HENDRICKSON, P.J. and PIPER, J., concur.